**Patsy ALLEN, Individually and as Next Friend of Darin Beau Allen, a Minor, Appellant,**

v.

**EMPLOYERS CASUALTY COMPANY, Appellee.**

No. 07–94–0060–CV.

Court of Appeals of Texas, Amarillo.

Nov. 17, 1994.

John B. Scott, Fort Worth, for appellant.

Gibson, Ochsner & Adkins, L.L.P., Kenneth S. Muncy and Todd O. Lafferty, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

Appealing from the take-nothing judgment rendered in her action seeking death benefits under the Texas Workers' Compensation Act (the Act),[1] Patsy Allen, individually and as next friend of Darin Beau Allen, a minor, contends the jury's failure to find that her deceased husband's fatal heart attack was compensable under the Act was against the great weight and preponderance of the evidence. Allen also makes an appellate contention that section 408.008 of the Act is unconstitutional.[2] Based upon the authorities discussed, the trial court's judgment will be affirmed.

The facts leading up to litigation are not disputed, but an overview is appropriate to position the contested expert medical testimony. On 4 April 1991, Allen's husband, Jerry Don Allen (Jerry), the deceased, and his son, Gregory Darin Allen (Darin), were drilling for gold in Truth or Consequences, New Mexico, in the scope of their employment with Burkett Drilling Company. The two men arrived at the drilling site about nine o'clock in the morning and proceeded to drill a hole 200 to 240 feet deep, until the pipe hit water and became twisted and could not pump out the water.

---

**1.** At the time Allen originally sought recovery, her action was governed by the Texas Workers' Compensation Act of 1989. Tex.Rev.Civ.Stat. Ann. art. 8306 *et seq.* (Vernon Supp.1991). Since that time, the Texas Workers' Compensation Act has been codified in Texas Labor Code chapter 401 *et seq.* Tex.Labor Code Ann. § 401.001 *et seq.* (Vernon Pamph.1994). The provision under which Allen sought recovery, article 8308–4.15, was not changed in the codification, and is now found in section 408.008 of the code. References to the Act will be to the article or section in effect at the time of the action noticed.

**2.** References herein to section 408.008 are to that section of the Texas Labor Code Annotated (Vernon Pamph.1994).

Removing the pipe was made more rigorous due to the twisting, and each twenty-foot section connection had to be straightened by beating it with an eight pound sledge hammer as it was lifted from the hole. Father and son alternated the work, with one pounding the pipe and the other operating the machinery to lift the pipe out of the hole, and then switching jobs on each section of pipe. Resultingly, during the approximately one hour it took the two to accomplish the task, Jerry pounded between five and six sections of pipe, hitting each section approximately ten times with the sledge hammer. Both men exerted energy in this task, but Jerry was not experiencing any stated pain or illness.

After the pipe was out of the ground and the equipment was loaded on the truck, but still in the course of employment,[3] the men decided to walk a half-mile to an old abandoned miner's cabin. They walked at a normal pace, and reached the cabin in twenty-five to thirty minutes, during which time both men became a little out-of-breath, but Jerry was not ill or experiencing any stated pain.

After exploring the cabin, they proceeded toward a windmill, about a quarter-mile away from the cabin, for a drink of water. About half-way there, Jerry laid down on the ground, complaining of chest pains. Darin went to the windmill to get some water for his father, but realized he did not know how to operate it.

Darin went back for his father, and the two went to the windmill together. As Jerry was explaining to Darin how to operate the pump, he "fell over." When Darin's attempts to revive his father failed, he went to find someone to help. By the time Darin returned with help, Jerry was dead.

No autopsy was performed. The cause of death was listed on the death certificate as atherosclerotic cardiovascular disease (ASCVD), commonly known as a heart attack caused by hardening of the arteries. Although Jerry fell within several risk categories for heart disease, prior to his death, he appeared to be healthy and had never exhib-

ited, nor complained of, symptoms associated with heart disease.

Believing the strenuous work of beating the pipe was the major cause of Jerry's heart attack, Allen sought death benefits under the Act from Employers Casualty Company, the workers' compensation insurance carrier for Burkett Drilling Company. The Act's former article 8308–4.15 provided, and its present section 408.008 now provides, that:

A heart attack is a compensable injury under this subtitle only if:

(1) the attack can be identified as:

(A) occurring at a definite time and place; and

(B) caused by a specific event occurring in the course and scope of the employee's employment;

(2) the preponderance of the medical evidence regarding the attack indicates that the employee's work rather than the natural progression of a preexisting heart condition or disease was a substantial contributing factor of the attack; and

(3) the attack was not triggered solely by emotional or mental stress factors, unless it was precipitated by a sudden stimulus.

Finding "the evidence insufficient to uphold the conclusions that [t]he preponderance of medical evidence shows that Mr. Allen's work, rather than the natural progression of atherosclerosis, was a substantial contributing factor to his heart attack," the Texas Workers' Compensation Commission denied death benefits to Allen.

Allen appealed from the Commission's decision to the district court, alleging there was sufficient evidence that Jerry's condition was substantially caused by his work and was compensable under the Act. Further, she generally alleged that the then governing article 8308–4.15 of the Act, as it related to heart attack victims, was unconstitutional.

At trial, Darin testified to the events leading up to his father's death, and depositions of two physicians, containing conflicting testi-

3. L.C. Burkett, owner of Burkett Drilling Company, stated the Allens were "on the clock" from the time they left their hotel room until they returned to their room.

mony regarding the contribution of Jerry's work to his death, were presented. The cause was submitted to the jury on the sole question, "Did Jerry Don Allen, on April 4, 1991, receive a compensable heart attack?" By a vote of ten of the twelve jurors, the jury answered "No" to the question, and the trial court rendered a take-nothing judgment against Allen on the verdict.

Allen motioned for a new trial, alleging the jury's finding was against the great weight and preponderance of the evidence and there was sufficient evidence to support her proposition that the work was the substantial cause of the heart attack. Allen did not re-urge her claim of unconstitutionality by the motion for new trial or any other filing.

By this appeal, Allen presents a dichotomy of errors. She first contends the jury's answer to the question presented for her recovery under the Act is against the great weight and preponderance of the evidence. Second, she alleges the section of the Act under which she sought recovery is unconstitutional. Discussing Allen's points of error in reverse order, we first address the contention of the statute's unconstitutionality.

At the outset, we note that Allen initially complained of article 8308–4.15 of the Act as being unconstitutional because it "effectively terminates any rights a beneficiary had to collect death benefits as a result of the criteria for establishing a heart attack." This was the sum total of Allen's complaint in her original petition, and it was not expanded by any further pleadings or any argument at trial, nor was it presented as a basis for the granting of a new trial or in any other post-trial motion.

Allen's appellate complaint is that section 408.008 of the Act, the successor statute to the repealed article 8308–4.15, is unconstitutional in that it violates her rights to open courts, due process of law, and equal protection. The appellate argument is vague in its application of the stated law to the present facts; nevertheless, it is notably different from the complaint alleged in the petition.

Predicates for complaints on appeal must be preserved at the trial court level by motion, exception, objection, or some other vehi-

cle. Tex.R.App.P. 52(a); *PGP Gas Products, Inc. v. Fariss,* 620 S.W.2d 559, 560 (Tex. 1981). Absent certain exceptions not at issue, a party cannot complain on appeal about an error made in the trial court unless the error was called to the trial court's attention. Tex.R.App.P. 52(a); *Lewis v. Texas Employers' Ins. Ass'n,* 151 Tex. 95, 246 S.W.2d 599, 600 (1952).

▮ The constitutionality of a statute will be considered only when the question is properly raised and a decision becomes necessary and appropriate to the disposal of the case. *Wood v. Wood,* 159 Tex. 350, 320 S.W.2d 807, 813 (1959). Mere allegations of unconstitutionality such as those proposed by Allen, do not entitle a party to an adjudication of the validity of a statute. *Ex parte Southland Independent School District,* 518 S.W.2d 921, 927 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.).

▮ Even so, the further reasons are twofold why we cannot review the constitutionality of section 408.008. First, when a litigant alleges and seeks a declaration that a statute is unconstitutional, the Attorney General must be served with a copy of the proceedings, and is entitled to be heard. *Estate of Ross,* 672 S.W.2d 315, 317 (Tex.App.—Eastland 1984, writ ref'd n.r.e), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985). The record in the instant case does not reflect the Attorney General was ever served or participated; thus, we have no jurisdiction to review the allegation of unconstitutionality. *Id.*

▮ Second, it is a fundamental rule of constitutional law that a court will not pass upon the constitutionality of a statute at the behest of one who availed himself of its benefits. *Hurst v. Guadalupe Cty. Appraisal Dist.,* 752 S.W.2d 231, 233 (Tex.App.—San Antonio 1988, no writ). In the instant case, Allen availed herself of the benefits afforded by the statute she now contends to be unconstitutional by seeking recovery under it; therefore, we will not pass on the issue of whether the statute is constitutional. Her second point of error is overruled.

▮ Allen's initial complaint of error is that the jury's failure to find that Jerry

suffered a compensable heart attack is against the great weight and preponderance of the evidence. This is so, she argues, because the evidence was clear and uncontroverted that prior to his death, Jerry was healthy, suffered only from slight bursitis, and but for the job activities performed on the day of his death, he would not have suffered the fatal heart attack.

In reviewing the "against the great weight and preponderance of the evidence point," we must consider all of the evidence, including evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. If, after considering all of the evidence of probative value, the jury's verdict is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust, we should sustain the point and set aside the verdict. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). This is true even if the verdict is supported by more than a scintilla of evidence, and even though reasonable minds could differ about the conclusion to be drawn from the evidence. Otherwise, this Court should overrule the point and affirm the judgment. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

To recover, Allen had the burden to establish by the evidence that the her husband's heart attack was a compensable injury under the Act; that is, that

> the preponderance of the medical evidence regarding the attack indicates that the employee's work rather than the natural progression of a preexisting heart condition or disease was a substantial contributing factor of the attack[.]

Section 408.008(2). She contends she met her burden by the evidence that prior to his death, Jerry never experienced any symptoms associated with heart disease and, immediately prior to his death, he engaged in strenuous activities in the performance of his job. However, *the jury heard other evidence* to consider in reaching its verdict.

Absent an autopsy, two medical doctors expressed their opinions, which were formulated from reading records related to Jerry's death and the death certificate. David S. Starr, M.D., a cardiovascular specialist, testi-fied that Jerry fell within several categories of persons at risk for heart attacks: He was (1) a male, (2) over age 50, (3) who had a family history of heart disease, and (4) who smoked a pack to a pack and one-half of unfiltered cigarettes a day. The doctor concluded that Jerry died of ASCVD as stated in the death certificate.

In explanation, Dr. Starr testified that ASCVD progresses gradually as a "cheesy substance" in the arteries in all people, but progresses more rapidly in some people, depending upon different risk factors. Although there are symptoms associated with the disease, about 30% of people have "absolutely no symptoms until they actually have their first heart attack." Dr. Starr opined that the ASCVD was the "substantial cause of his [Jerry's] death as opposed to the activities that he was engaged in that day," because "this was an event waiting to happen. This could have occurred after a heavy meal, after going to bed at night.... So that could have happened at—at any of those time[s]."

John V. Denko, M.D., a certified pathologist, stated that in his medical opinion, the cause of death was "myocardial infarct, coronary occlusion cardiovascular disease." Although Dr. Denko disagreed with Dr. Starr, believing rather that Jerry's "work activity was a substantial contributing cause" to his death, when asked about the extent of "his coronary artery disease," he responded, "Well, it killed him." Dr. Denko agreed that people can have coronary artery disease without being aware of it, and just because the symptoms are absent does not necessarily mean they don't have the disease.

Considering all the evidence of probative value, the jury determined that the preponderance of the medical evidence did not indicate that the work rather than the natural progression of the ASCVD was a substantial contributing factor to Jerry's heart attack. Even though there is medical evidence contrary to the jury's determination, the jury reached the answer it deemed most reasonable from the conflicting evidence, and we are not authorized to set it aside. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 797

(1951). It follows that the jury's answer is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Allen's first point of error is overruled.

Accordingly, the judgment is affirmed.