OPINION

BARAJAS, Chief Justice.
This is an appeal from a suit brought under the Texas Election Code by Appellee Judge Peter S. Peca against Appellants Robert and Olga Osterberg. The trial court entered judgment on a jury verdict for Peca in the amount of $63,447.82 plus post-judgment interest. We affirm the judgment in part and reverse and render in part.
I. FACTUAL AND PROCEDURAL HISTORY
In 1991, Robert Osterberg was involved in litigation pending in Judge Peter Peca’s court. The Osterbergs were dissatisfied with the way Peca treated them, and when Peca ran for reeleetion in 1994, they made campaign contributions totaling $34,200 to Albert Biel, Peca’s opponent in the democratic primary. Robert Osterberg also created and paid for an advertisement to run on local television, the text of which was as follows: CONSIDER THIS:
• Judge Peca was chosen by his peers El Paso’s outstanding jurist
• He graduated Summa Cum Laude
• He worked to reduce his docket for over 7 years
IF THAT’S ENOUGH, VOTE FOR HIM
(next screen)
But, if you want ONE who understands:
• The Courthouse exists for the people, and not for judges, accidents of politics, and lawyers.
• The spirit of the law, not just the letter, must be employed for justice and the people.
*124 • Efficiency at the expense of justice cannot be tolerated.
BRING THE COURTHOUSEBACK TO THE PEOPLE!
VOTE FOR HIS OPPONENT And remove HIM in four years if he fails the will of the people!
Ad paid for by Bob Osterberg [emphasis in original]
The Osterbergs spent a total of $28,695 for the ad’s production and air time during the primary campaign.
After winning the primary election on March 8, Peca filed the underlying suit against the Osterbergs for violations of the Texas Election Code. Peca sought civil damages from the Osterbergs under Section 253.131 of the Election Code, which provides a private cause of action to candidates against “[a] person who knowingly makes or accepts a campaign contribution or makes a campaign expenditure in violation” of Chapter 253 of the Code. TexElection Code Ann. § 253.131 (Vernon Supp.1997). Damages available under Section 253.131 include twice the amount of the unlawful expenditures or contributions and attorney’s fees. TexElection Code Ann. § 253.131(d)(1) and (2)(Vernon Supp.1997). Peca alleged that the Osterbergs violated Chapter 253 by making direct campaign expenditures for the television ads in violation of Section 253.002, which makes direct campaign expenditures unlawful unless the person making the expenditure complies with Subchapter C to Chapter 253. Tex. Election Code Ann. § 253.002(b)(l)(Vernon Supp.1997). Sub-chapter C includes two parts, § 253.061 and § 253.062. Section 253.061 pertains to direct campaign expenditures under $100. TexElection Code Ann. § 253.061 (Vernon Supp.1997). Since it is undisputed that the Osterbergs’ expenditures on the television ads were each over $100, § 253.061 does not apply. Section 253.062, which applies to expenditures over $100, therefore, is the relevant statute in this case. It reads, in pertinent part:
(a) Except as otherwise provided by law, an individual not acting in concert with another ‘person may make one or more direct campaign expenditures in an election from his own property that exceed $100 on any one or more candidates or measures if:
(1) the individual complies with Chapter 25b as if the individual were a campaign treasurer of a political committee . ... TexElection Code Ann. § 253.062 (Vernon Supp.1997). [Emphasis added].
Peca charged that the Osterbergs ran afoul of Section 253.062 by acting in concert with other persons in making the expenditures for the ads, and by failing to report the expenditures as required by Chapter 254.
The jury agreed with Peca and found that both Robert and Olga Osterberg knowingly made direct campaign expenditures without complying with the reporting requirements in Chapter 254 as required by Section 253.062(a)(1), and that they acted in concert with one or more persons when they made the expenditures in violation of Section 253.062(a). Peca also alleged violations of Chapter 254 on other grounds, but the jury was unable to reach a verdict on those allegations. The trial court entered judgment against the Osterbergs jointly and severally in the amount of $57,390 (twice the amount of the Osterbergs’ expenditures as found by the jury), plus pre- and post-judgment interest.
II. DISCUSSION
In twelve points of error, the Osterbergs challenge the constitutionality of the Election Code sections under which they were found liable to Peca, the legal and factual sufficiency of the evidence to support certain elements of Peca’s cause of action, and the accuracy of several of the jury questions and instructions submitted by the trial court.
A. Constitutional Issues
In their first four points of error, the Osterbergs contend that the Texas Election Code sections under which they were found liable violate the free speech and association clauses of the United States and Texas constitutions. We note at the outset that the Osterbergs waived their constitutional arguments. The constitutionality of a statute will be considered only when the question is *125 properly raised and a decision becomes necessary and appropriate to the disposal of the case. Wood v. Wood, 159 Tex. 350, 320 S.W.2d 807, 813 (1959); Allen v. Employers Cos. Co., 888 S.W.2d 219, 222 (Tex.App.— Amarillo 1994, no writ). Predicates for complaints on appeal must be preserved at the trial court level by motion, exception, objection, or some other vehicle. Tex.RApp.P. 52(a); PGP Gas Products, Inc. v. Fariss, 620 S.W.2d 559, 560 (Tex.1981). Mere allegations of unconstitutionality do not entitle a party to an adjudication of the validity of a statute. Allen, 888 S.W.2d at 222, citing Ex parte Southland Indep. Sch. Dist., 518 S.W.2d 921, 927 (Tex.App.—Amarillo 1974, writ ref'd n.r.e.).
In this case, the Osterbergs pleaded in their answer only that “[t]he allowance of damages sought by the Plaintiff in his Second Amended Original Petition would violate the freedom of speech and association clauses of the U.S. and Texas Constitutions.” The only other reference to constitutional questions in this record prior to the submission of the case to the jury is the following statement in the Osterbergs’ Motion for Directed Verdict:
[Ijmposing the restrictions of the reporting and expenditure requirements of a specific political committee, along with the accompanying penalties, on your Defendants would be a violation of the free speech and association clauses of the United States and Texas Constitutions. These restrictions burden the exercise of political speech and are not narrowly enough focused to serve a compelling interest of the state.
The trial court gave the Osterbergs an opportunity to present argument in support of their Motion for Directed Verdict, but they declined arguing only that the “motion speaks for itself.”[1] Although the Osterbergs expanded their constitutional arguments to include challenges to several relevant Election Code provisions on vagueness grounds in their Motion to Modify Judgment and Alternative Motion for New Trial, this post-verdict pleading was insufficient to preserve the constitutional issues for appellate review. See McCraw v. Vickers, 717 S.W.2d 738, 741 (Tex.App.—San Antonio 1986, no writ)(constitutional challenges to commissioner’s court order raised for first time in motion for new trial did not preserve the issues for appeal).
Parties to a lawsuit are restricted on appeal to the issues and theories on which the case was tried in the trial court, and an appellate court, absent fundamental error, is not authorized to consider an issue or theory that was not before the trial court. McCraw, 717 S.W.2d at 741, citing Prudential Ins. Co. of America v. J.R. Franclen, Inc., 710 S.W.2d 568, 569 (Tex.1986); Gulf Consolidated International, Inc. v. Murphy, 658 S.W.2d 565, 566 (Tex.1983). Likewise, constitutional arguments not asserted in the trial court are waived on appeal. Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex.1993); Walker v. Employees Retirement Sys. of Texas, 753 S.W.2d 796, 798 (Tex.App.—Austin 1988, writ denied). Our role on review is to determine whether the trial court erred in rendering judgment based on the record before it. Great North Am. Stationers, Inc., v. Ball, 770 S.W.2d 631, 634 (Tex.App.—Dallas 1989, no writ); see also, Ragsdale v. Progressive Voters League, 790 S.W.2d 77, 85 (Tex.App.—Dallas 1990), affirmed in part and reversed in part on other grounds, 801 S.W.2d 880 (Tex.1990). We find that the Osterbergs’ two broadly stated allegations, unsupported by further argument or evidence, were insufficient to call the multiple specific constitutional challenges they raise on appeal to the attention of the trial court.[2] *126 Accordingly, we overrule the Osterbergs’ first four points of error.
B. Definition of the Term “Knowingly”
In their ninth point, the Osterbergs maintain that the trial court committed reversible error by improperly instructing the jury on the definition of the term “knowingly.” Section 253.131 of the Election Code, the section under which the Osterbergs were found liable, provides a civil cause of action to aggrieved candidates against a “person who knowingly makes or accepts a campaign contribution or makes a campaign expenditure in violation of this chapter_” Tex.Election Code Ann. § 253.131(a)(Vernon Supp. 1997). [Emphasis added]. Thus, the language of the statute requires that a person have knowledge that his or her campaign contribution or expenditure violates the Election Code before he or she may be civilly liable. The Osterbergs asked the trial court to instruct the jury that “knowingly” means “an actual awareness that the campaign expenditure is illegal or making a campaign expenditure with the intent to not comply with the reporting requirements for that expenditure.” Instead, the trial court included the following definition in the charge:
A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to be in violation of the law.
The Osterbergs objected to the instruction as submitted. On appeal, the Osterbergs contend that the trial court’s instruction failed to inform the jury that the term “knowingly” as used in the statute requires that the defendant know his or her expenditure violates the Election Code before the aggrieved candidate is entitled to damages.
Where the trial court refuses a requested instruction or definition, the question on review is whether the trial court abused its discretion. Anderson v. Vinson Exploration, Inc., 832 S.W.2d 657, 661 (Tex.App.—El Paso 1992, no writ), on remand, 892 S.W.2d 183 (Tex.App.—El Paso 1994, writ denied). Jury charge error is reversible only when the error caused, or can be reasonably calculated to have caused, the rendition of an improper verdict. Tex.R.App.P. 81(b); Anderson, 832 S.W.2d at 661. After a review of the charge as a whole, we do not find that the trial court abused its discretion by refusing the Oster-bergs’ requested definition.
Contrary to the Osterbergs’ contentions, the definition of “knowingly” as submitted in the context of the charge as a whole adequately informed the jury that the Oster-bergs had to be aware that their conduct in making direct campaign expenditures for the television ads would violate the Election Code before they could be' liable to Peca for damages. The jury was asked if the Oster-bergs made the expenditures “knowingly.” Along with the definition of the term “knowingly,” the trial court instructed the jury on the law applicable to direct campaign expenditures as follows:
[a] person may not knowingly make or authorize a direct campaign expenditure, except that an individual not acting in concert with another person may make one or more direct campaign expenditures in an election from his own property that exceed $100.00 on any one or more candidates or measures if he reports them as if the individual were a campaign treasurer of a political committee....
The trial court also instructed the jury on the reporting requirements applicable to campaign treasurers of political committees. Thus, the jury was instructed on the applicable law under the Election Code, and actions that would violate the law. These instructions, coupled with the trial court’s definition of “knowingly” as awareness that the relevant' conduct is reasonably certain to violate the law, adequately informed the jury that the Osterbergs could not be civilly hable to Peca under Section 253.131 unless they were *127 aware that the expenditures were in violation of the Election Code. Accordingly, we find that the trial court did not abuse its discretion in submitting the definition of “knowingly” and we overrule the Osterbergs’ ninth point of error.
C. Submission of Questions Regarding “State of Mind”
In their tenth point, the Osterbergs contend that the trial court committed reversible error by refusing to require the requisite state of mind on Questions 4 and 8 in the jury charge. The questions, which were identical except Question 4 applied to Robert and Question 8 applied to Olga, were submitted as follows:
Do you find that Robert Osterberg (Olga Osterberg) failed to file a report of expenditures by an individual not later than the 8th day before the election for the direct campaign expenditures found by you to have been made in answer to Question No. l(Question No. 5)?
Questions 1 and 5 inquired whether Robert and Olga, respectively, had made the alleged direct expenditures “knowingly.” The Oster-bergs contend that the trial court erred by failing to include the term “knowingly” in Questions 4 and 8 so that the questions would have read:
Do you find that Robert Osterberg (Olga Osterberg) knowingly failed to file a report of expenditures by an individual not later than the 8th day before the election for the direct campaign expenditures found by you to have been made in answer to Question No. l(Question No. 5)?
We do not find that the trial court erred in failing to include the term “knowingly” in Questions 4 and 8.
Section 253.131 provides for civil liability when a person “knowingly” makes a campaign contribution or expenditure in violation of the Election Code. Section 253.062, the violation of which Peca relied upon in this ease to establish the requisite violation, however, does not require a “knowing” state of mind. Rather, it affirmatively requires a person making a direct expenditure to file a report as if he or she were a campaign treasurer of a political committee. Tex.Election Code Ann. § 253.062(a)(l)(Vernon Supp.1997). Thus, civil liability under Section 253.131 requires a finding first, that there was a violation of another provision of Chapter 253, and second, that the violation was committed knowingly. Although the charge inverted the order, it essentially inquired whether there were violations of Section 253.062(a)(1) with Questions 4 and 8, then inquired whether the violations were accomplished “knowingly” for purposes of civil liability under Section 253.131 in Questions 1 and 5. We therefore find that it was unnecessary for the trial court to include the term “knowingly” in Questions 4 and 8. Accordingly, we do not find that the trial court abused its discretion in the way it submitted Questions 4 and 8, and we overrule the Osterbergs’ tenth point of error.
D. Evidentiary Points
The Osterbergs contend, in three points of error, that the evidence is legally and factually insufficient to support the jury’s findings that they committed two violations of the Election Code, and to support the finding that they did so knowingly. In considering a legal sufficiency or “no evidence” point, an appellate court considers only the evidence which tends to support the jury’s findings and disregards all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.1965); Worsham Steel Co. v. Arias, 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ). If any probative evidence supports the jury’s determination, it must be upheld. In re King’s Estate, 150 Tex. 662, 244 S.W.2d 660, 661-62 (Tex.1951); Neily v. Aaron, 724 S.W.2d 908, 913 (Tex.App.—Fort Worth 1987, no writ); see generally William PoweRS, JR. & Jack Ratliff, Another Look at “No Evidence” and “Insufficient Evidence,” 69 Tex.L.Rev. 515 (1991).
A factual sufficiency point requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. In re King’s Estate, 244 S.W.2d at 660; Worsham Steel Co., 831 S.W.2d at 81. *128 The reviewing court cannot substitute its conclusions .for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. Carrasco v. Goatcher, 623 S.W.2d 769 (Tex.App.—El Paso 1981, no writ). It is not within the province of this Court to interfere with the jury’s resolution of conflicts in the evidence or to pass on the weight or credibility of the witness’s testimony. Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792 (Tex.1951); Reynolds v. Kessler, 669 S.W.2d 801, 807 (Tex.App.—El Paso 1984, no writ). Where there is conflicting evidence, the jury’s verdict on such matters is generally regarded as conclusive. Clark v. Nat’l Life & Accident Ins. Co., 145 Tex. 575, 200 S.W.2d 820, 821 (Tex.1947); Oechsner v. Ameritrust Texas, N.A., 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied).
Since civil liability under Section 253.131 hinges on knowing violations of the Election Code, we will first address the Osterbergs’ challenge to the sufficiency of the evidence to support the jury’s finding that they were aware that their expenditures for the ads could violate the Election Code. Then we will address the Osterbergs’ contentions that the evidence is insufficient to support the jury’s findings that they committed violations of the Code.
1. Knowingly
In their eighth point of error, the Oster-bergs challenge the legal and factual sufficiency of the evidence to support the jury finding that they knowingly violated the Election Code.
a. Robert Osterberg
Robert Osterberg testified that he did not know anything about the Election Code. He contended that had he known of the Election Code’s requirements, he would have followed them. On the other hand, Albert Biel testified that he heard Peca speak at an El Paso Bar Association meeting about one month prior to the election. At the meeting, Peca accused Osterberg of “playing fast and loose” with the Election Code. Biel found the “tenor” of Peca’s comments to be an accusation that Osterberg was violating the Election Code. He told Osterberg about Peca’s comments. There is little other evidence in this record regarding Osterberg’s knowledge, or lack of knowledge, of the Election Code.
Biel’s comments to Osterberg are at least some evidence that Osterberg received knowledge of the Election Code as well as knowledge that his expenditures could be in violation of the Code. Osterberg’s testimony to the contrary is not of such weight that it renders the jury’s finding manifestly unjust. Although a different jury on a different day may have reached a different conclusion, we find the evidence both legally and factually sufficient to support this jury’s verdict as to Robert Osterberg. Accordingly, we overrule the Osterbergs’ seventh point to the extent it relates to Robert Osterberg.
b. Olga Osterberg
Although we find sufficient evidence in this record to support the jury’s finding that Olga Osterberg participated in making the relevant expenditures, (she signed checks to pay for the ad’s air time and sometimes participated in discussions regarding the election), we find the record completely devoid of evidence that Olga Osterberg participated in the expenditures with knowledge that they were in violation of the Election Code.[3] Peca points us to none. In light of our own review of the record and Peca’s tacit concession, we find the evidence legally insufficient to support the jury’s finding that Olga Osterberg knowingly made direct expenditures in violation of the Election Code. Accordingly, we sustain the Osterbergs’ eighth point of error to the extent it relates to Olga Osterberg.
2. Violations of the Code
In their eleventh and twelfth points, the Osterbergs attack the sufficiency of the evidence to support the jury’s findings on the *129 underlying Code violations; that they failed to report their expenditures and that they acted in concert with another person in making the expenditures. Since we found no evidence to support the jury’s finding that Olga Osterberg had knowledge that her actions could be in violation of the Election Code, she cannot be civilly hable under Section 253.131 to Peca for any underlying violation of the Election Code she may have committed. We therefore need only review the sufficiency of the evidence to support the jury’s findings that Robert Osterberg violated the Election Code.
3.Violation of the Reporting Requirements
Chapter 254 requires that expenditures be reported on the 30th day, and again on the 8th day before the election. Tex.Election Code Ann. § 254.124(b)(c)(Vernon Supp.1997). Robert Osterberg admits that he did not file any reports until May 4, 1994, almost one month after the election. He argues, however, that substantial compliance is all that is required under the statute. He contends that his belated filing constitutes substantial compliance with Section 254.124(b) and (c) and the evidence is therefore legally and factually insufficient to support the jury’s finding that he failed to report his expenditures pursuant to Section 254.124(b) and (c).
We find that Robert Osterberg has waived his substantial compliance argument. The Osterbergs never argued prior to, or during, trial that substantial compliance satisfies the filing requirements of Section 254.124. The jury was instructed that the statute requires filings on the 30th and 8th day prior to the election without mention of substantial compliance. The question submitted to the jury inquired whether Robert Osterberg “failed to file a report of expenditures by an individual not later than the 8th day before election day . ...” [Emphasis added]. The Osterbergs did not object to the instruction or to the question on “substantial compliance” grounds. They neither requested an instruction to the jury on substantial compliance, nor submitted a jury question seeking a finding that their May 4 filing substantially complied with the statutory requirement.
We therefore evaluate the sufficiency of the evidence under the definition in the trial court’s charge as submitted to the jury. See Larson v. Cook Consultants, Inc., 690 S.W.2d 567, 568 (Tex.1985); Allen, 380 S.W.2d at 609; Houston Mercantile Exchange Corp. v. Dailey Petroleum Corp., 930 S.W.2d 242, 246 (Tex.App.—Houston [14th Dist.] 1996, no writ). The evidence is undisputed that Robert Osterberg failed to file a report “not later than the 8th day before election day” as the jury charge inquired. Accordingly, we find the evidence sufficient, both legally and factually, to support the jury’s finding. We overrule the Osterbergs’ twelfth point of error.
4.Acting in Concert
In their eleventh point of error, the Oster-bergs contend that the evidence is legally and factually insufficient to support the jury’s finding that Robert Osterberg violated the Election Code by making direct expenditures in concert with another person. Our disposition of point twelve makes resolution of this point unnecessary. Section 253.062 both requires reporting, and forbids acting in concert with another, when making direct campaign expenditures. Failure to comply with either requirement is a violation of the Election Code. One knowing violation is all that is required for civil liability under Section 253.131. See TexElection Code Ann. § 253.131(a)(Vernon Supp.l997)(“a person who knowingly makes ... a campaign expenditure in violation of this Chapter is liable for damages ... ”). Since we have found the evidence sufficient to support Robert Osier-berg’s violation of the reporting requirement, we need not reach the question of whether Robert Osterberg acted in concert with another.
5.Express Advocacy Issues
a. Jury Definition of “Campaign Expenditure”
In their sixth point, the Osterbergs assert reversible error in the trial court’s definition of the term “campaign expenditure.” The *130 trial court defined the term as the Texas Election Code defines it:
[A]n expenditure made by any person in connection with a campaign for an elective office or on a measure. Whether an expenditure is made before, during, or after an election does not affect its status as a campaign expenditure. ‘Direct campaign expenditure’ means a campaign expenditure that does not constitute a campaign contribution by the person making the expenditure.
See Tex.Election Code Ann. § 251.001(7)(8)(Vernon Supp.1997). The Ost-erbergs contend that the term “campaign expenditure” should have been defined as “an expenditure for communications that expressly advocate the election or defeat of a clearly identified candidate.” The Oster-bergs base this point of error on arguments raised in their first four points that the term “direct campaign expenditure” is unconstitutionally vague. They maintain that the term “expressly advocate” is required to remedy the unconstitutionally vague definition. As we have determined in our consideration of Points One through Four, the Osterbergs waived any argument that the term is unconstitutionally vague by failing to present the issue to the trial court.
Although the Osterbergs timely requested the definition they now advocate, they did not object to the definition as given to the jury on the ground that it is unconstitutionally vague. An objection must specifically point out the objectionable matter and the grounds for the objection. Tex.R.Civ.P. 274. Only a specific objection affords the trial court with an opportunity to correct any errors in the charge. See Texas Farmers Ins. Co. v. Soriano, 844 S.W.2d 808, 828 (Tex.App.—San Antonio 1992), rev’d on other grounds, 881 S.W.2d 312 (Tex.1994)(purpose of Rule 274 is to prevent ambushing trial judge with vague and indefinite objections and grounds so trial judge has fair opportunity to correct any possible error).
Moreover, the Osterbergs’ objection to the definition differs from the complaint they raise on appeal. An objection is necessary to preserve error where, as here, the trial court submits an allegedly defective definition, instruction, or question. Tex.R.Civ.P. 274. The Osterbergs objected to the charge as follows:
But ‘Campaign Expenditure’ as it’s supposed to be defined, as stated in Buckley v. Valeo, [424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)], is this: ‘Campaign Expenditure means an expenditure made in connection with a campaign for an elective office in opposition to or in support of any candidate.’_ It says, ‘has to be in support of or in opposition to a candidate’, and ‘that’s your—that’s your civil penalty provision.’
On appeal, the Osterbergs complain that the phrase “expressly advocate” was omitted from the definition. The objection as they made it, however, does not point out the absence of “expressly advocate.” Any complaint on appeal that is different from the objection at trial is waived. Davis v. Campbell, 572 S.W.2d 660, 663 (Tex.1978); Exxon Corp. v. Allsup, 808 S.W.2d 648, 655 (Tex.App.—Corpus Christi 1991, writ denied). Accordingly, we find that the Osterbergs waived the specific complaint they attempt to raise on appeal.
Finally, we find that error, if any, in the charge based on the objection the Oster-bergs actually made, that the definition of “campaign expenditure” had to include the phrase “in support of or in opposition to a candidate,” was cured. The trial court submitted the relevant question to the jury as follows:
Do you find that Robert Osterberg, individually, knowingly made or authorized one or more direct campaign expenditures that were made either in opposition to Peca or in support of Biel during the period beginning the 39th day before election day and continuing through the 10th day before election day? [Emphasis added].
Thus, the jury was informed within the language of the question that the “direct campaign expenditure” had to be “in opposition to Peca or in support of Biel” before the jury could respond affirmatively to the question. The Osterbergs’ concerns as articulated in their objection, to the charge therefore were *131 adequately addressed with the language included in the question. Bearing in mind the standard of review applicable to charge error that we previously articulated in our discussion of Point of Error No. Nine above, we cannot find that the definition as submitted, when read in the context of the charge as a whole, was reasonably calculated to, and probably did cause, the rendition of an improper verdict on the grounds presented in the Osterbergs’ objection. Accordingly, we overrule Point of Error No. Six.
b. Sufficiency of the Evidence of Direct Campaign Expenditure
In their fifth point of error, the Ost-erbergs challenge the legal and factual sufficiency of the evidence to support the jury’s finding that Robert Osterberg made a direct campaign expenditure in opposition to Peca or in support of Biel. The Osterbergs’ argument is based on their contention that the charge should have defined “campaign expenditure” as “an expenditure for communications that expressly advocate the election or defeat of a clearly identified candidate.” The Osterbergs maintain that the ad in question did not “expressly advocate” the election of Biel or the defeat of Peca as that term has been defined in the federal courts. See Federal Election Comm’n v. Central Long Island Tax Reform, 616 F.2d 45, 53 (2nd Cir.1980)(speech that only impliedly advocates the election or defeat of a candidate is not express advocacy). As we found in Point of Error No. Six, however, the Osterbergs failed to object to the charge on this ground. When a controlling issue is submitted, however erroneously or incompletely, the parties are thereby put on notice that the jury’s answers to the issues actually submitted will form the basis of the court’s judgment. Allen v. American Nat. Ins. Co., 380 S.W.2d 604, 609 (Tex.1964). It then becomes the burden of both parties to object to the erroneous submission in order to later complain of its application to them. Allen, 380 S.W.2d at 609; Tex.R.Civ.P.274. If the Osterbergs wished to have the advertisement held to the definition of “express advocacy” they advance on appeal, then they should have objected at trial and challenged the submission on that ground. This, as we have determined in our discussion of Point of Error No. Six, they failed to do.
We therefore evaluate the sufficiency of the evidence under the definition in the trial court’s charge as submitted to the jury. See Larson, 690 S.W.2d at 568; Allen, 380 S.W.2d at 609; Houston Mercantile Exchange Corp., 930 S.W.2d at 246. The charge required the jury to find that Robert Osterberg made a direct expenditure “in opposition to Peca or in support of Biel.” The ad itself provides the bulk of the evidence relevant to this point. The ad begins in a complimentary fashion essentially conceding that Peca is qualified to do the job of district judge. If credentials are “enough,” the ad urges the listener, vote for Peca. The ad goes on, however, to admonish the listener to vote for Peca’s opponent if the listener wants a judge who understands that the courthouse exists for the people, and who will not tolerate the sacrifice of justice to efficiency. The message is clear: credentials are not “enough,” and Peca does not understand that the courthouse exists for the people. The ad calls' for specific action when it exhorts the listener to:
‘BRING THE COURTHOUSE BACK TO THE PEOPLE! VOTE FOR HIS [Peca’s] OPPONENT!’ [Emphasis in original].
The text of the ad itself therefore provides at least some evidence that the ad is in opposition to Peca. Although the Osterbergs called several witnesses who testified that they interpreted the ad as an expression of Robert Osterberg’s opinion rather than as advocacy for or against any candidate, the personal interpretations of these witnesses are not of such weight that they render the jury’s finding on this issue manifestly unjust. Bearing in mind the standard of review we articulated under points eight, eleven, and twelve, we find the evidence sufficient to withstand the Osterbergs’ factual and legal challenges to the jury’s finding that Robert Osterberg made a direct campaign expenditure in opposition to Peca or in support of Biel. We overrule the Osterbergs’ fifth point of error.
*132 6. Liability of Robert and Olga for the Same Expenditures
The Osterbergs’ seventh point alleges error in the trial court’s entry of judgment against both Olga and Robert Osterberg for the very same expenditures. Since we have determined that the evidence is insufficient to maintain the jury’s verdict against Olga Osterberg, we need not reach this point of error.
III. PECA’S CROSS-POINTS
Peca raises two cross-points. First, he asserts that the trial court abused its discretion by failing to award his attorney’s fees in the judgment. Peca raises a second point contingent upon a remand for new trial based on any of the Osterbergs’ points. Since we do not find a remand for new trial necessary, we will not address Peca’s second cross-point.
ATTORNEY’S FEES
In his first cross-point, Peca alleges error in the trial court’s failure to award his reasonable and necessary attorney’s fees despite the language of Section 253.131 allowing both twice the amount of any unlawful expenditure and attorney’s fees as the civil penalty for violations of the Election Code. Tex.Election Code Ann. § 253.131(d)(1) and (2). We find, however, that Peca waived recovery by failing to obtain a jury finding on attorney’s fees. The jury answered only the first eight questions in the charge before informing the trial court that they were deadlocked on the remaining questions. Peca’s attorney’s fees question did not appear until Question 19, and it was not answered. Peca failed to object or request that the jury return to answer his attorney’s fees question. Accordingly, he waived the issue for appeal. See Fleet v. Fleet, 711 S.W.2d 1, 3 (Tex.l986)(trial court will not be reversed on incomplete verdict unless party who would benefit from answers to issues objects to incomplete verdict before jury is discharged).
Accordingly, we overrule Peca’s first cross-point.
In accordance with our discussion above, we affirm the trial court’s judgment against Robert Osterberg. We reverse the trial court’s judgment against Olga Osterberg and render judgment that Peca take nothing from Olga Osterberg.

. The trial court made reference to a brief submitted in support of the motion for directed verdict. The brief, however, is not in the record before this Court.

. We note that the United States Supreme Court has found that similar federal reporting requirements for individual independent expenditures bear a sufficient relationship to substantial governmental interests in stemming corruption and increasing the fund of information concerning those who support candidates to survive constitutional challenges similar to those the Osterbergs raise. See Buckley v. Valeo, 424 U.S. 1, 80-81, 96 S.Ct.612, 663-64, 46 L.Ed.2d 659, 722-23 (1976). Similarly, civil damages provisions in the Texas Election Code have been found to be an appropriate exercise of the legislature's authority to impose fines and penalties under its police powers. Civil penalties place some of the *126 expense for enforcement on those who violate the law rather than on the taxpaying public. Ragsdale v. Progressive Voters League, 790 S.W.2d 77, 82, 84-5 (Tex.App.—Dallas 1990), affirmed in part, reversed in part on other grounds, 801 S.W.2d 880 (Tex.1990).

. Due to illness, Olga Osterberg did not take part in or attend the trial. Peca did not object to proceeding without her.