**In the Interest of B.S.W., A Child.**

**No. 06–01–00111–CV.**

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 6, 2002.

Decided Sept. 18, 2002.

Ebb B. Mobley, Longview, for appellant.

Andy Porter, Quita Russell, Asst. Dist. Attys., Longview, for appellee.

Before MORRISS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

S.E.W., the alleged father of B.S.W., appeals the trial court's termination of his parental rights. S.E.W. contends the trial court erred when it denied his request for a paternity test. S.E.W. also contends the evidence is legally and factually insuffi-

cient to support the termination of parental rights.

T.A.W. left her two children, B.S.W. and E.N.P., with a sitter and failed to return for them. The State took possession of both children and filed suit to justify that action and to provide a legal basis on which to provide care for the children. In the State's initial petition, the father of B.S.W. is listed as unknown. The State terminated the parental rights of the mother. At some point the State, through the mother, determined that S.E.W., a prison inmate, might possibly be the father of B.S.W. On April 4, 1998, S.E.W. pleaded guilty to the offense of robbery and received an eight-year sentence.

On May 2, 2001, the State filed an amended petition seeking to terminate the parental rights of S.E.W. and had him personally served. There is no answer or response from S.E.W. to the State's petition in the clerk's record; however, S.E.W. sent a letter to the State's attorney stating that he was answering the case and that he wanted "to know how my daughter is doing." S.E.W. received court-appointed counsel for the termination hearing and testified via telephone at the hearing. At no time did S.E.W. officially acknowledge paternity of B.S.W. before the court, though in his letter to the State's attorney, he did ask how his daughter was doing. At the termination hearing, S.E.W. requested genetic testing. S.E.W. neither denied nor admitted paternity.

■ In S.E.W.'s first point of error, he contends the trial court committed reversible error when it denied his request for a paternity test. The State in its petition requested a determination of parentage and specifically requested the trial court to order a parentage test under Section 160.102 of the Family Code if S.E.W. denied paternity. Tex. Fam.Code Ann. § 160.102, *amended by* Act of May 25,

2001, 77th Leg., R.S., ch. 821, § 1.01, 2001 Tex. Gen. Laws 1610 (current version found at Tex. Fam.Code Ann. § 160.502 (Vernon Supp.2002)). Because this action commenced before the effective date of the Uniform Parentage Act, we look to the law at the time the proceeding was commenced. Act of May 25, 2001, 77th Leg., R.S., ch. 821, § 3.02, 2001 Tex. Gen. Laws 1642. In a suit to determine parentage, the Family Code requires, "When the respondent appears in a parentage suit, the court shall order the mother, an alleged father, and the child to submit to the taking of blood, body fluid, or tissue samples for the purpose of scientifically accepted parentage testing." Tex. Fam.Code Ann. § 160.102(a) (Vernon 1996). Though not required under Section 160.102(a), S.E.W. requested genetic testing. The trial court never ordered the parentage test.

The language of the statute is mandatory. Under Chapter 160, when determining parentage, the trial court shall order parentage testing. The trial court erred in failing to order a parentage test when the State requested a determination of parentage under Chapter 160.

Though the trial court erred in failing to order the testing, S.E.W. does not make any argument in his brief as to how this error harmed him. In order to be reversible error, we must conclude that the failure to grant the parentage test probably caused the rendition of an improper judgment or probably prevented S.E.W. from properly presenting the case to the court of appeals. Tex.R.App. P. 44.1. S.E.W. had the burden to show the error probably caused the rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *Crescendo Invs. v. Brice*, 61 S.W.3d 465, 477 (Tex. App.-San Antonio 2001, pet. denied). Although S.E.W. did not admit paternity before the trial court and requested a pater-

nity test, he requested custody of the child, and his letter to the State's attorney referred to B.S.W. as "my daughter." S.E.W. testified he went with the child's mother to the hospital when she found she was pregnant and lived with her, providing her a home, until he went to jail. He testified his mother helped support B.S.W. by caring for her for over a year. S.E.W. listed his mother as a possible placement for the child, but his mother did not come forward. In his brief, S.E.W. offers no argument as to how the defense of his case would have been altered by a positive paternity test. The State presented evidence S.E.W. had been incarcerated for more than two years and had not cared for the child since her birth. Because S.E.W. failed to meet his burden to show the error probably caused the rendition of an improper judgment, we overrule his first point of error.

 In his second point of error, S.E.W. contends the evidence is legally insufficient to support the termination of his parental rights. The trial court filed findings of fact stating there is a "substantial probability" that S.E.W. is the biological father of B.S.W., that it is in the best interest of B.S.W. to terminate S.E.W.'s parental rights, if any exist, and that S.E.W. knowingly engaged in conduct that resulted in his conviction and confinement or imprisonment and inability to care for B.S.W. for not less than two years from the date of the filing of the petition, May 2, 2001. Section 161.001 provides for the involuntary termination of the parent-child relationship. Specifically, the relationship may be terminated if the parent "knowingly engaged in criminal conduct that has resulted in the parent's: conviction of an offense; and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition" and that "termination is in

the best interest of the child." TEX. FAM. CODE ANN. § 161.001(1)(q), (2) (Vernon Supp.2002).

In order to terminate the parent-child relationship, the party seeking to terminate the relationship must establish each of the elements by clear and convincing evidence. TEX. FAM.CODE ANN. § 161.001. The appellate standard for reviewing termination findings has recently been set out in detail by the Texas Supreme Court in *In re C.H.*, 89 S.W.3d 17 (Tex.2002). The standard for our review in determining whether clear and convincing evidence has been provided to justify termination is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *Id.* at 25–26; *see* TEX. FAM. CODE ANN. § 101.007 (Vernon 1996) (" 'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."). The Court reasoned that this provides a standard that "focuses on whether a reasonable jury could form a firm conviction or belief [yet] retains the deference an appellate court must have for the factfinder's role." *In re C.H.*, at 26.

In reaching this conclusion, the Court explicitly rejected standards "that retain the traditional factual sufficiency standard while attempting to accommodate the clear-and-convincing burden of proof." *Id.; see, e.g., In re W.C.*, 56 S.W.3d 863, 868 n. 3 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Leal v. Tex. Dep't of Protective and Regulatory Servs.*, 25 S.W.3d 315, 321 (Tex.App.-Austin 2000, no pet.). The Court also disapproved of a test articulated in several cases which stated that a court of appeals must determine whether a

reasonable trier of fact could conclude that the existence of a disputed fact is "highly probable." *In re C.H.*, at 26.

Under this review, the Court emphasized we must maintain the respective constitutional roles of juries and appellate courts.

"An appellate court's review must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt." *Id. See Santosky*, 455 U.S. at 767–69, 102 S.Ct. 1388 (holding that "beyond reasonable doubt" standard not required in termination cases). While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.

*Id.* at 26.

The evidence clearly shows S.E.W. is currently incarcerated on an eight-year sentence for robbery. S.E.W. challenges the trial court's finding that he is unable to care for the child "for not less than two years from the date of filing the petition." TEX. FAM.CODE ANN. § 161.001(1)(q). S.E.W. contends the statute acts prospectively and the State had to prove his sentence would not expire for at least two years after the filing of the live petition on May 2, 2001. *In re I.V.*, 61 S.W.3d 789, 798 (Tex.App.-Corpus Christi 2001, no pet.), the court applied the prospective view. However, the Waco, Fort Worth, and El Paso courts have all adopted the opposite view, looking backward from the

filing of the petition to see if the parent had been incarcerated for two years before the filing of the petition. *In re A.L.S.*, 74 S.W.3d 173, 176 (Tex.App.—El Paso 2002); *In re A.R.R.*, 61 S.W.3d at 700; *In re A.V.*, 57 S.W.3d 51, 60 (Tex.App.-Waco 2001, pet. filed). We adopt the statutory interpretation expressed by Fort Worth, Waco, and El Paso which requires a petitioner to prove that a respondent knowingly committed criminal conduct resulting in the respondent's imprisonment and inability to care for the child for at least two years before the date the petition is filed. It is undisputed that S.E.W. has been incarcerated since 1998, and the State filed the petition to terminate on May 2, 2001, more than two years after S.E.W.'s incarceration. The evidence is legally sufficient to support the trial court's finding.

■ Encompassed in his legal sufficiency argument, S.E.W. contends that "to terminate Appellant's parental rights would be a violation of his rights under Article 1, Section 21, of the Texas Constitution, which provides: 'No conviction shall work corruption of blood, or forfeiture of estate, and the estates of those who destroy their own lives shall descend or vest as in case of natural death.'"[1] TEX. CONST. art. I, § 21. He also relies on TEX.CODE CRIM. PROC. ANN. art. 1.19 (Vernon 1977), which provides: "No conviction shall work corruption of blood or forfeiture of estate." The Texas Supreme Court has interpreted this to mean that unlike in England where a convict is deemed civilly dead and cannot inherit, Texas preserves the inheritance of a convicted felon from forfeiture through corruption of blood. *Davis v. Laning*, 85 Tex. 39, 42, 19 S.W. 846, 847 (1892).

1. Twenty-eight states prohibit corruption of blood. This provision in the Texas Constitution was in response to English common law, which provided that the estates of those con-

victed of a felony would be forfeited to the king. *See* GEORGE D. BRADEN ET AL., CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 74 (1977).

"An order terminating the parent-child relationship divests the parent and the child of all legal rights and duties with respect to each other, except that the child retains the right to inherit from and through the parent unless the court otherwise provides." Tex. Fam.Code Ann. § 161.206(b) (Vernon 1996). The natural parent may no longer inherit from the child. Tex. Prob.Code Ann. § 40 (Vernon Supp.2002). Although not explicitly articulated in his brief, S.E.W.'s complaint is that by terminating his parental rights, his constitutional rights have been violated because he is now precluded from inheriting from B.S.W. The trial court specifically terminated his parental rights pursuant to Section 161.001(q) of the Texas Family Code, which provides for termination of parental rights in cases where the parent knowingly commits a crime and is incarcerated or imprisoned and is unable to care for the child for two years from the date of the filing of the petition. S.E.W. did not challenge the constitutionality of Section 161.001(q) in the trial court, he raises this issue for the first time on appeal.

As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal. Tex.R.App. P. 33.1; *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993); *Wood v. Wood*, 159 Tex. 350, 320 S.W.2d 807, 813 (Tex.1959); *Walker v. Employees Retirement Sys.*, 753 S.W.2d 796, 798 (Tex. App.-Austin 1988, writ denied).

 A facial challenge to the constitutionality of a statute may be raised for the first time on appeal. *Rose v. State*, 752 S.W.2d 529, 552–53 (Tex.Crim.App.1987) (op. on reh'g); *Rabb v. State*, 730 S.W.2d 751, 752 (Tex.Crim.App.1987). In a facial challenge, the challenging party contends that the statute, by its terms, always operates unconstitutionally. *See Tex. Workers'*

*Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex.1995) (citing *New York State Club Ass'n v. New York City*, 487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988); *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987)). In other words, a challenger must establish that no set of circumstances exists under which the statute would be valid. *Salerno*, 481 U.S. at 745, 107 S.Ct. 2095; *Wilson v. Andrews*, 10 S.W.3d 663, 670 (Tex.1999); *Brenneman v. State*, 45 S.W.3d 729, 732 (Tex.App.-Corpus Christi 2001, pet. ref'd). The United States Supreme Court further observed in *Salerno* that just because a statute "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *Salerno*, 481 U.S. at 745, 107 S.Ct. 2095; *see also New York v. Ferber*, 458 U.S. 747, 767, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113, 1129 (1982); *United States v. Raines*, 362 U.S. 17, 21–22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). However, an "as applied challenge" only requires the challenger to demonstrate that the statute operates unconstitutionally when applied to the challenger's particular circumstances. *Garcia*, 893 S.W.2d at 518 n. 16.

Care in the analysis of constitutional challenges must be taken because such challenges take different forms with different results. *Rodriguez v. State*, 71 S.W.3d 800, 802 (Tex.App.-Texarkana 2002, no pet.). A facial challenge to the constitutionality of a statute on which a defendant's conviction is based contests a court's jurisdictional power to enforce the statute under any circumstances; a challenge to the statute as applied in the defendant's particular circumstances does not. *McGowan v. State*, 938 S.W.2d 732, 739–42 (Tex.App.-Houston [14th Dist.] 1996), *aff'd*,

975 S.W.2d 621 (Tex.Crim.App.1998). Thus, the former may be raised for the first time on appeal, while the latter is waived unless it is raised in the trial court. *Id.* at 741–42 (op. on reh'g); *see also Garcia v. State,* 887 S.W.2d 846, 861 (Tex. Crim.App.1994) (holding that because a statute providing for the jury charge was neither facially unconstitutional nor void ab initio, the appellant was required to object at trial in order to preserve error for purposes of appeal); *see generally* 43A GEORGE E. DIX ET AL., TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE §§ 42.253–54 (2d ed.2001).

Because S.E.W. specifically complains that the termination of his parental rights violates his constitutional rights under the Texas Constitution, he has made an "as applied challenge." By failing to raise a constitutional challenge in the trial court, he has waived this contention on appeal. We overrule S.E.W.'s second point of error.

■ In S.E.W.'s final point of error, he contends the evidence is factually insufficient to support the trial court's finding that it is in the best interest of B.S.W. to terminate his parental rights. Review of factual sufficiency of the evidence under a clear and convincing standard requires us to determine whether the evidence is sufficient to make the existence of the facts highly probable, not whether the evidence supporting the finding is sufficient to make the existence of fact more probable than not, as in ordinary civil cases. *In re D.T.,* 34 S.W.3d 625, 632 (Tex.App.-Fort Worth 2000, pet. denied). That is, we must consider whether the evidence is sufficient to produce in the mind of the fact-finder a firm belief or conviction as to the truth of the allegation sought to be established. *Id.; Faram v. Gervitz–Faram,* 895 S.W.2d 839, 843 (Tex.App.-Fort Worth 1995, no writ). We are required to consider all of the evidence in the case in making this determination. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406 (Tex.1998). Accordingly, S.E.W. must show that the evidence is so weak or that the evidence to the contrary is so overwhelming that the trier of fact could not have reasonably concluded there was a high probability the termination was in the best interest of the child.

In *Holley v. Adams,* the Texas Supreme Court provided us with a nonexclusive list of factors to help determine the best interest of the child: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d 367, 371–72 (Tex.1976). This listing is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent.

This case involves a young child born in August 1998 and therefore too young to express her desires. There is no evidence S.E.W. has ever cared for the child, providing her with physical, financial, or emotional support. The evidence clearly shows that the child may have lived with or been cared for by S.E.W.'s mother for awhile, but there is no evidence whatsoever that during that period, S.E.W. had any contact with the child. He is currently incarcerated, and no one offered on his

behalf to care for the child. S.E.W. has never met B.S.W.; he has been incarcerated since before her birth. His testimony reveals he has had no contact with the mother of the child since the child's birth. He contends his family will support the child until his release; however, no family member came forward to seek custody of the child. S.E.W. complains the State furnished no home study or service plan; however, there was no home for the State to study. The mother's parental rights had already been terminated. Although there is some evidence S.E.W.'s mother may have cared for the child in the past. S.E.W. testified his attempts to contact his mother have been unsuccessful.

Under the third *Holley* factor, S.E.W.'s propensity toward anti-social behavior, as demonstrated by his criminal convictions and his behavior while in prison, is evidence that he may be an emotional or physical danger to B.S.W. now and in the future. S.E.W. has no job with which to support the child, and it is purely speculative as to when S.E.W. will be released from prison. S.E.W. filed no claim of paternity with the paternity registry and has not attempted to maintain contact with B.S.W. since his incarceration.

The evidence is factually sufficient to support the trial court's finding that it is in the best interest of the child to terminate S.E.W.'s rights. The State proved each of its required elements with clear and convincing evidence. We overrule S.E.W.'s final point of error.

We affirm the trial court's judgment.