In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00141-CR


______________________________




MICHIAL L. MOSES, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court


Camp County, Texas


Trial Court No. 7991




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Michial L. Moses should be given credit for being resourceful, at least. Moses has filed a
notice of appeal in connection with his attempt to obtain a "writ of error coram nobis" in the county
court of Camp County, Texas. That writ is an English common-law remedy originally directed to
the King's Bench and is now defined as a writ of error directed to a court for review of its own
judgment and predicated on alleged errors of fact. Black's Law Dictionary 362 (8th ed. 2006).

 There are two problems with Moses' appeal: (1) there is no trial court order from which he
attempts this appeal, and (2) a writ of error coram nobis is not available here, even from a final
appealable order. We dismiss this appeal for want of jurisdiction.

 Even if a writ of error coram nobis was available to Moses--and it was not available (1)--we
see no indication that the county court has ruled on Moses' request. We have jurisdiction only over
appeals from certain types of orders and final judgments. The right of appeal in a criminal case is
a substantive right determined solely within the province of the Legislature. Lyon v. State, 872
S.W.2d 732, 734 (Tex. Crim. App. 1994). "A defendant in any criminal action has the right of
appeal under the rules hereinafter prescribed." Tex. Code Crim. Proc. Ann. art. 44.02 (Vernon
2006). Generally, a criminal defendant may appeal only from a final judgment. See State v. Sellers,
790 S.W.2d 316, 321 n.4 (Tex. Crim. App. 1990); Ahmad v. State, 158 S.W.3d 525, 527 (Tex.
App.--Fort Worth 2004, pet. ref'd). The clerk's record reveals that no final order or judgment exists
in this case. Thus, there is no ruling to appeal, and we have no jurisdiction over this proceeding.

 We dismiss the appeal for want of jurisdiction.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 24, 2007

Date Decided: September 25, 2007


Do Not Publish
1. In Texas, a habeas proceeding is the exclusive means to set aside a conviction in a collateral
proceeding; neither the writ of error coram nobis nor the writ of audita querela is available in Texas
to accomplish this purpose. See McBride v. State, 114 S.W.3d 556, 557 (Tex. App.--Austin 2002,
no pet.); see also Ex parte McCune, 156 Tex.Crim. 213, 246 S.W.2d 171, 172 (1952) (writ of error
coram nobis not available in Texas as post-conviction remedy); Ex parte Mendenhall, 209 S.W.3d
260, 261 (Tex. App.--Waco 2006, no pet.).

 A defendant convicted of a misdemeanor offense may seek habeas relief in the county court
of the county where the misdemeanor was charged to have been committed. See Tex. Code Crim.
Proc. Ann. arts. 11.09, 11.21, 11.22 (Vernon 2005). We acknowledge that an examination of the
language of Article 11.09 reveals that it is permissive, not mandatory. The Texas Court of Criminal
Appeals has held that it was advisory in nature and that it was thus not sufficient to deprive the
district court of its jurisdiction to hear post-conviction habeas corpus petitions in cases involving
misdemeanors.  State  ex  rel.  Rodriguez  v.  Onion,  741  S.W.2d  433,  434  (Tex.  Crim.  App.
1987); Ex parte Johnson, 561 S.W.2d 841, 842 (Tex. Crim. App. 1978); Ex parte Tarango, 116
S.W.3d 201, 202 (Tex. App.--El Paso 2003, no pet.); In re Maxwell, 970 S.W.2d 70, 74 (Tex.
App.--Houston [14th Dist.] 1998, no pet.). An individual may seek to attack the validity of a
conviction by way of habeas corpus if he or she is either (i) confined or restrained as a result of a
misdemeanor charge or conviction or (ii) is no longer confined, but is subject to collateral legal
consequences resulting from the conviction. Ex parte Crosley, 548 S.W.2d 409, 409-10 (Tex. Crim.
App. 1977); Ex parte Rinkevich, 222 S.W.3d 900, 902 (Tex. App.--Dallas 2007, no pet.); see Ex
parte McCullough, 966 S.W.2d 529, 531-32 (Tex. Crim. App. 1998).



ts to his four children, J.C., G.C., I.C., and T.C., were terminated by the
trial court on Kimberly's petition, and Stephen, on appeal, challenges the factual sufficiency of the
evidence to support the jury's findings. We affirm the termination of Stephen's parental rights
because we find the evidence factually sufficient to support the findings (1) that at least one—in fact,
both—of the grounds alleged for termination existed, including (a) Stephen's endangering conduct
under Texas Family Code Section 161.001(1)(E) and (b) Stephen's knowing criminal conduct
resulting in his conviction and confinement and resulting inability to care for the children for at least
two years under Section 161.001(1)(Q); and (2) that termination of Stephen's parental rights was in
the children's best interests.
            Some factual background assists in understanding this matter. Stephen and Kimberly were
married on or about August 11, 1996, and ceased to live together as husband and wife on or about
March 28, 2001. Kimberly and Stephen had four children together: J.C., G.C., I.C., and T.C. At
the time of the jury trial on the petition for involuntary termination, the children whose interests were
at stake were as follows: son, J.C., age 9; son, G.C., age 7; son, I.C., age 6; and daughter, T.C., age
4.



            On March 27, 2002, Kimberly filed an original petition for divorce, termination of parental
rights, request for permanent injunction, renewal of protective order, and request to consolidate
cases. On August 21, 2002, after a bench trial, the trial court granted the divorce, terminated
Stephen's parental rights as to J.C., G.C., I.C., and T.C, and granted a permanent injunction. That
result was reversed by this Court because Stephen had been denied a jury trial. See In re J.C., 108
S.W.3d 914 (Tex. App.—Texarkana 2003, pet. ref'd). On remand, a jury trial was held beginning
February 9, 2004, and as a result Stephen's parental rights to the four children were terminated by
order signed March 11, 2004. In its order, the trial court found, based on the jury findings, that, by
clear and convincing evidence, Stephen had (1) "engaged in conduct . . . that endangers the physical
or emotional well-being of the children"; and (2) "knowingly engaged in criminal conduct that has
resulted in his conviction of an offense and confinement or imprisonment and inability to care for
the children for not less than two years from the date the petition was filed." In addition, the trial
court found that, by clear and convincing evidence, "termination of the parent-child relationship
between STEPHEN CLARK and the children the subject of this suit is in the best interest of the
children." 
1.         The Evidence Is Factually Sufficient To Support the Findings That at Least One of the
Grounds Alleged for Termination Existed

            Stephen challenges the factual sufficiency of the evidence to support the termination of his
parental rights to the four children at issue. The trial court's termination of Stephen's parental rights
set  out  its  findings,  based  on  the  jury  verdict,  supporting  two  statutory  grounds  for
termination, (a) his conduct endangering the children and (b) his criminal confinement causing his
inability to care for the children for at least two years. 
            Any complaint that the evidence is legally or factually insufficient to support the findings
necessary for termination is analyzed by a heightened standard of appellate review. See In re C.H.,
89 S.W.3d 17, 25 (Tex. 2002). The Texas Supreme Court has now held that the appellate standard
for reviewing the factual findings made to support termination proceedings is whether the evidence
is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the
allegations made in support of the claimed termination. This is the language used by the court to
explain the working of the "clear-and-convincing evidence" standard of review. The court also
disapproved of cases holding that termination findings should be upheld if they are not against the
great weight and preponderance of the evidence. Id. at 23.
            If, in light of the entire record, the disputed evidence that a reasonable trier of fact could not
have credited in favor of the finding is so significant that a trier of fact could not reasonably have
formed a firm belief or conviction to support termination, then the evidence is factually insufficient. 
Id. at 25. Accordingly, Stephen must show that the evidence is so weak, or that the evidence to the
contrary is so overwhelming, that the trier of fact could not have reasonably found it sufficient to
support the termination. In re B.S.W., 87 S.W.3d 766, 772 (Tex. App.—Texarkana 2002, pet.
denied). This he has failed to do.
            a.         The Evidence Is Factually Sufficient To Support the Finding That Stephen Engaged
in Endangering Conduct Under Section 161.001(1)(E)

            Section 161.001(1)(E) of the Texas Family Code focuses exclusively on the parent's conduct. 
Under this section, proof that the parent's course of conduct endangered the child's physical or
emotional well-being is sufficient. Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987); In re S.F., 141 S.W.3d 774, 776 (Tex. App.—Texarkana 2004, no pet.); see Tex. Fam. Code
Ann. § 161.001(1)(E) (Vernon 2002). "Endanger" means to expose to loss or injury; to jeopardize. 
See Boyd, 727 S.W.2d at 533.
            Here, there was evidence of direct physical abuse of at least one of the children by Stephen. 
In August 2001, Stephen pled guilty to injury to a child, for an offense committed March 4, 2000,
when, according to Kimberly, he punched J.C. in the midsection while at a drive-in restaurant in
Henderson and, in the process, broke J.C.'s hand. Kimberly also testified that, on or about
November 27, 1998, Stephen beat the then three-year-old J.C. with a belt. That beating left bruises
on J.C. from his head to his toes, including his buttocks. Child Protective Services investigated that
incident and concluded J.C. had been abused by Stephen. Hence, in January 1999, Stephen was
indicted for an injury to a child, but Kimberly filed an affidavit of nonprosecution on that charge. 
            It is not necessary that the conduct be directed at the child or that the child actually suffer
injury. Id. The violent acts and behavior directed at one child and at the child's mother in the
presence of the other children satisfy the requirement of Section 161.001(1)(E). Ziegler v. Tarrant
County Child Welfare Unit, 680 S.W.2d 674 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.). The
child endangerment which would satisfy Section 161.001(1)(E) can be inferred from parental
misconduct without a showing of any "actual and concrete threat of injury to the child's emotional
and physical well-being." Boyd, 727 S.W.2d at 533. If the evidence shows a course of conduct
which has the effect of endangering the child's physical or emotional well-being, then a finding under
former Section 15.02(1)(E), now Section 161.001(1)(E), is supportable. Id. at 534.
            Stephen previously pled guilty to two counts of sexually assaulting Kimberly and to one
count of injury to J.C. The pattern of abuse which was first reported in 1998 continued until 2001,
the time of Stephen's final arrest. Stephen continued thereafter to verbally abuse Kimberly from his
prison cell by way of letters and cards. 
            Additionally, the caselaw interpreting Section 161.001(1)(E) has allowed for termination of
the parent-child relationship for violent or negligent conduct directed at the other parent or other
children, even where the behavior was not committed in the child's presence. Dir. of Dallas County
Child Protective Servs. Unit of Tex. Dep't of Human Servs. v. Bowling, 833 S.W.2d 730, 733 (Tex.
App.—Dallas 1992, no writ). Therefore, even though the sexual assaults on the mother may not
have been in the direct presence of the children,


 the caselaw allows for termination of the parent-child relationship. Moreover, the fact that G.C. and T.C. had not yet been born at the time of the
1998 assault on J.C. does not negate the fact that the pattern of abuse existed. The continuing course
of abusive conduct by Stephen is evidence that the four children's emotional and physical well-being
has been endangered.
            b.         The Evidence Is Factually Sufficient To Support the Finding That Stephen Engaged
in Knowing Criminal Conduct Resulting in His Conviction and Confinement and His
Resulting Inability To Care for the Children for at Least Two Years Under Section
161.001(1)(Q)
            The evidence clearly shows Stephen is currently incarcerated on a ten-year sentence for two
sexual assault convictions and one conviction for injury to a child. Stephen challenges the trial
court's finding that there is factually sufficient evidence that he knowingly engaged in criminal
conduct that has resulted in his conviction of an offense and confinement or imprisonment and
inability to care for the children for not less than two years from the date of filing the petition. Tex.
Fam. Code Ann. § 161.001(1)(Q) (Vernon 2002). Stephen contends that, even if the statute is
applied prospectively, Kimberly failed to prove Stephen's inability to care for his children for at least
two years from the date of the petition.
            Subsection Q is to be read prospectively. In re A.V., 113 S.W.3d 355, 360 (Tex. 2003). A
prospective reading of subsection Q allows the State to act in anticipation of a sentenced parent's
abandonment of the child and not just in response to it. Id. The purpose of subsection Q is to look
to future imprisonment and inability to care for the child in order to protect the children whose
parents will be incarcerated for periods exceeding two years after termination proceedings begin. 
Id. at 360–61. 
            The petition to terminate Stephen's parental rights was filed March 27, 2002, after the
convictions became final August 9, 2001. Therefore, the State had to prove that Stephen would be
incarcerated until March 27, 2004. The State submitted the final convictions, for which Stephen was
sentenced to ten years. Moreover, there is nothing to show Stephen is not still incarcerated during
this appeal, more than two years after the petition was filed. Therefore, reading subsection Q
prospectively, Stephen's parental rights were properly terminated.
2.         The Evidence Is Factually Sufficient To Support the Finding That Termination of Stephen's
Parental Rights Was in the Children's Best Interests

            Under Section 161.001, the trier of fact must find that termination is in the best interest of
the child. See Tex. Fam. Code Ann. § 161.001(2) (Vernon 2002). There is a strong presumption
that the best interest of the child is served by keeping custody in the natural parent. See In re D.M.,
58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). The parents' rights, however, are not
absolute; protection of the child is paramount. A.V., 113 S.W.3d at 361. 
            In Holley v. Adams, the Texas Supreme Court set out a nonexclusive list of factors to help
determine the best interest of the child: (1) the desires of the child; (2) the emotional and physical
needs of the child now and in the future; (3) the emotional and physical danger to the child now and
in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available
to assist these individuals to promote the best interest of the child; (6) the stability of the home or
proposed placement; (7) the acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the
parent. 544 S.W.2d 367, 371–72 (Tex. 1976). Best interest, however, need not be proven by any
unique set of factors, nor is proof limited to any specific factor. See In re H.R., 87 S.W.3d 691, 700
(Tex. App.—San Antonio 2002, no pet.). We briefly examine some of the factors.
            a.         Desires of the Children
            Carl Barber, the children's attorney ad litem, testified that the children said Stephen was not
a real father to them. The children indicated that, while Stephen was at home, the house was "just
chaos with yelling, screaming, violence and was an unhappy place," but now that Stephen is not
there, "home is a happy place." 
            Barber testified that, when he interviewed six-year-old G.C., regarding why G.C. purposely
called Stephen "Father" and not "Dad," he responded that, "Dads are somebody that takes care of you
and does things with you and Father is just your father." Moreover, the children responded "no"
when questioned as to whether they miss their father. Barber testified that the children were not
interested in continuing a relationship with Stephen. 
            b.         Emotional and Physical Needs of the Children
            Stephen stands convicted of an injury to a child. Also, the pictures of the beaten J.C. show
dark and large bruises over much of his body, including his buttocks. Kimberly testified the children
have learned Stephen's violent behavior and are violent toward one another. Even though the
children did not testify during the termination proceeding, it is clear from Barber's testimony the
children perceive the home to be happy without Stephen. A happy home is important to the
emotional and physical needs of the children and for the well-being of the children in general.
            Further, there is evidence in the record of medical neglect of a child when, on March 4, 2000,
after breaking J.C.'s hand by punching him, Stephen failed to take him to the hospital as soon as
possible. The family instead traveled in the family van to another city, Tyler, from Henderson,
before taking J.C. for medical care, because Stephen was concerned that his history of abuse in
Henderson would cause him trouble if they got medical care for J.C. there. 
            c.         Stephen's Parental Ability and Programs Available
            In 1995, Stephen entered anger management classes. In 1998, however, Stephen beat J.C.
with a belt. Thereafter, Stephen again entered counseling and started medication for depression and
bi-polar disorder in 1999. Again in 2001, Stephen physically abused Kimberly and J.C., for which
he pled guilty.
            After being incarcerated, Stephen took mandatory abuse prevention treatment classes. He
has not taken any parenting classes. Stephen offered the jury many excuses for his behavior, from
accident to losing his temper. The blame-shifting illustrates Stephen's failure to own up to his
actions and inactions. Ultimately, blame-shifting would inhibit improvement or growth within the
family.
            d.         Stability of Proposed Placement
            The four children will be living with their mother, Kimberly. The placement is stable, and
the children will be residing with one parent. As Barber testified, the children are happy at home
now that Stephen is absent. There is no evidence either Kimberly or the person she is dating has ever
abused the children. "The rights of parenthood are accorded only to those fit to accept the
accompanying responsibilities." A.V., 113 S.W.3d at 361. Therefore, the jury findings supporting
placement of the children with Kimberly and termination of Stephen's parental rights are supported
by the evidence.
            e.         Emotional and Physical Danger to the Children
            The evidence of Stephen's heedless and repeated sexual abuse of Kimberly with the children
present in the house, at times within their hearing—added to the evidence of his past actions of
physical abuse of the children—amply demonstrate the danger posed to the children by Stephen and
support the jury findings.
            Based on Stephen's actions, his inactions, his history of physical and mental abuse, and his
failure to take responsibility or to remedy past problems, we conclude that the evidence was factually
sufficient to support the jury's determination that termination was in the best interests of the children. 
Even though Stephen testified he has completed certain abuse treatment programs, we conclude that
the evidence is factually sufficient to support the trial court's finding that termination was in the best
interests of the children.
            We overrule the factual insufficiency contentions and affirm the trial court's judgment.
 


                                                                        Josh R. Morriss, III
                                                                        Chief Justice
 
Date Submitted:          September 30, 2004
Date Decided:             December 7, 2004