In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00104-CV

                                                ______________________________

 

 

 

                             IN THE INTEREST OF K.J.T.M., A CHILD

 

 

                                                                                                  


 

 

                                       On Appeal from the 307th
Judicial District Court

                                                             Gregg County, Texas

                                                     Trial Court No. 2008-2581-DR

 

                                                   
                                               

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            After
the entry of a judgment terminating Kenny McFarland, Jr.’s, parental rights to
K.J.T.M., McFarland has filed this appeal. 
McFarland has made a timely filing of a motion for new trial and a
statement of appellate points.  See Tex.
Fam. Code Ann. § 263.405(b) (Vernon 2008).  Although the trial court denied McFarland’s
motion for new trial, it found his appeal not to be frivolous and continued the
appointment of trial counsel for the purpose of appeal.  We affirm the judgment of termination of
McFarland’s parental rights as entered by the trial court.

I.          FACTUAL AND PROCEDURAL
BACKGROUND

            On
November 26, 2008, K.J.T.M., then one week old, was brought into the care of
the Texas Department of Family and Protective Services (Department).[1]  At the time of his child’s birth, McFarland
was incarcerated in the juvenile detention center in Longview.  Now, McFarland is currently serving a twenty-year
sentence for aggravated robbery[2]
in the Texas Youth Commission.  K.J.T.M.
is with her brother in the care of a foster family who hopes to adopt her.  

            A
bench trial was held October 13, 2009, at which time McFarland’s parental rights
were terminated pursuant to Section 161.001 of the Texas Family Code.  Tex.
Fam. Code Ann. §§ 161.001(1)(D), (N), 161.001(2) (Vernon Supp.
2009).  McFarland appeals from the order
of termination,[3]
claiming (1) the evidence is legally and factually insufficient to support
termination under Section 161.001(1)(D) and (N) of the Texas Family Code, (2) Section
263.405(i) of the Texas Family Code is unconstitutional in its application
because it denies McFarland due process of law, (3) Section 263.405(i) of the
Texas Family Code is unconstitutional in principle and in application because
it violates the separation of powers doctrine of the Texas Constitution, and
(4) Section 263.405(b) of the Texas Family Code is unconstitutional because
it delegates to the trial court the power to determine whether the appeal is
frivolous.  Tex. Fam. Code Ann. § 161.001(D), (N), § 263.405 (Vernon
2008).

II.        STANDARD OF REVIEW

            A.        Termination of Parental Rights

            Termination
of parental rights is a drastic remedy and is of such weight and gravity that
due process requires the petitioner to justify termination by clear and
convincing evidence.  Tex. Fam. Code Ann. §§ 161.001,
161.206(a) (Vernon 2008); In re J.F.C.,
96 S.W.3d 256, 263 (Tex. 2002).  This
intermediate standard falls between the “preponderance of the evidence”
standard of ordinary civil proceedings and the “beyond a reasonable doubt”
standard of criminal proceedings.  In re G.M., 596 S.W.2d 846, 847 (Tex. 1980);
In re K.W., 138 S.W.3d 420, 425 (Tex.
App.––Fort Worth 2004, pet. denied). 
Clear and convincing evidence is that degree of proof which will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established. 
In re C.H., 89 S.W.3d 17, 25–26
(Tex. 2002); In re A.W., No. 06-07-00118-CV,
2008 WL 360825, at *1 (Tex. App.––Texarkana Feb. 12, 2008, no pet.) (mem. op.).

            B.        Standard in Conducting Legal and Factual
Sufficiency Review

            In reviewing the legal sufficiency
of the evidence, we view all the evidence in a light most favorable to the
finding to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that its finding was true.  Tex.
Fam. Code Ann. § 101.007 (Vernon 2008); J.F.C., 96 S.W.3d at 266; C.H.,
89 S.W.3d at 25.  Looking at the evidence
in the light most favorable to the judgment means that we must assume that the
fact-finder resolved disputed facts in favor of its finding if a reasonable
fact-finder could do so.  A corollary to
this requirement is that a court should disregard all evidence that a
reasonable fact-finder could have disbelieved or found to have been
incredible.  J.F.C., 96 S.W.3d at 266.  If
we determine that no reasonable fact-finder could form a firm belief or conviction
that the grounds for termination were proven, then the evidence is legally
insufficient, and we must generally render judgment for the parent.  See
id.; see also Tex. R. App. P.
43.3.

            When
reviewing a factual sufficiency challenge to a parental rights termination, we
consider the evidence the fact-finder could reasonably have found to be clear
and convincing.  C.H.,
89 S.W.3d at 25–26.  In applying this
standard to a trial court’s findings, we ask whether there was sufficient
evidence presented to produce in the mind of a rational fact-finder a firm
belief or conviction as to the truth of the allegations sought to be
established.  In re N.R., 101 S.W.3d 771, 774 (Tex. App.—Texarkana 2003, no
pet.).  In making this analysis, we give
due deference to the fact-finder’s findings and do not supplant those findings
with our own.  In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).

            We
also acknowledge that sufficient proof of one statutory termination ground, in
tandem with the finding that termination is in the best interest of the child,
is sufficient to support a termination order. 
In re A.V., 113 S.W.3d 355,
361 (Tex. 2003).  

III.       ANALYSIS OF POINTS OF
ERROR

            A.        Constructive Abandonment

            In its order of
termination, the court found by clear and convincing evidence that McFarland
has:

7.2.2    constructively abandoned the child who has been in the permanent
or temporary managing conservatorship of the Department of Family and
Protective Services or an authorized agency for not less than six months and:
(1) the Department or authorized agency has made reasonable efforts to return
the child to the father; (2) the father has not regularly visited or maintained
significant contact with the child; and (3) the father has demonstrated an
inability to provide the child with a safe environment.[4]

 

            This
finding mirrors the language set forth in Section 161.001(1)(N) of the Texas Family
Code.  See Tex. Fam. Code Ann.
§ 161.001(1)(N).  McFarland contests the
legal and factual sufficiency of the evidence to support the first and second
elements of the constructive abandonment ground, claiming that the record is
devoid of evidence that the State made reasonable efforts to return the child
to him and offered no information to allow contact with the child.

                        (1)        Reasonable efforts to return the child 

            McFarland
initially contends that the State failed to prove, by clear and convincing
evidence, that it made reasonable efforts to return K.J.T.M. to him.  We note that there is some authority to
suggest that the element concerning reasonable efforts to return the child is
inapplicable when the parent is incarcerated. 
See In re D.T., 34 S.W.3d 625,
633 (Tex. App.––Fort Worth 2000, pet. denied) (second element not applicable
because appellant was incarcerated).  Regardless,
implementation of a family service plan by the Department is generally
considered a reasonable effort to return a child to the parent.  In re
M.R.J.M., 280 S.W.3d 494, 505
(Tex. App.––Fort Worth 2009, no pet.); In
re K.M.B., 91 S.W.3d 18, 25 (Tex. App.––Fort Worth 2002, no pet.).  Here, McFarland claims there was no service
plan.

            McFarland
maintained that during his thirteen-month period of incarceration which
coincided with termination proceedings, a Department employee visited him only
on two occasions.  The first visit took
place to inform McFarland that K.J.T.M. was being taken into the custody of the
State, and the second took place August 17, 2009.[5]  McFarland complains that he was neither provided
with a service plan to review or to sign, nor was he provided with contact
information for the Department.  Based
upon this history, McFarland contends that the record is devoid of evidence
that the Department made reasonable efforts to return K.J.T.M. to him. 

            The
record indicates that McFarland did, in fact, receive a service plan.  McFarland recalls a visit from the Department
employee by the name of “Lydia” (identified by other evidence as being Lydia
Nehls) while he was in the juvenile detention center.  Although McFarland testified that Nehls provided
him with neither a service plan nor with contact information, a copy of a
service plan dated February 25, 2009, was admitted into evidence without
objection.[6]  Further, Mona Nolen, the Department
investigator in charge of this case, testified that it would have been Nehls’
responsibility to develop a service plan for McFarland.[7]  Karen Roberson, a Department conservatorship
worker, testified that Nehls developed a service plan for McFarland and made
face-to-face contact with him.  McFarland
was provided an outline of services that he could use to develop parenting
skills.  

            The
evidence clearly establishes that the Department did implement a family service
plan with respect to McFarland.[8]  However, because McFarland failed to
demonstrate the ability to parent and protect the child and to demonstrate an
acceptance of the responsibility of being a parent, he failed to comply with
the service plan.[9]  So, whether or not the Department was
required, under these circumstances, to present evidence that it made
reasonable efforts to return K.J.T.M. to McFarland, it did so by establishing
that it implemented a family service plan for McFarland.  

            Moreover,
the Department made efforts, although futile, to place K.J.T.M. with
relatives.  When Nolen visited McFarland
in the juvenile detention center, she inquired about relatives who could care
for the child.  There were no suitable
suggestions made.  McFarland provided
Nolen with the name of his mother, Janice Davis.  Because Davis had a lengthy history with the
Department regarding other children, she was determined not to be an
appropriate placement.  McFarland also
provided the names of his two sisters as possible placements.  However, one sister had children who were
being raised by Davis, and the other sister was in high school.[10]  Finally, the Department contacted McFarland’s
grandmother, Naya McFarland, regarding placement in her home; Naya advised that
she was neither physically nor financially able to care for the child.  Having determined that McFarland had no
relatives who were equipped to care for the child, the Department was unable to
place K.J.T.M. in the care of a relative.[11]  

            The
Department’s preparation and administration of a service plan, in conjunction
with its consideration of all relative placements, demonstrate that the trial
court did not err in finding that the Department made reasonable efforts to
return the child to McFarland.[12]  

(2)        The
failure to regularly visit or maintain significant contact with the child 

 

            McFarland
contends that he was continually confined since September 1, 2008, and the
State did not allege incarceration as a ground for termination.  Consequently, McFarland contends that the
State was obliged to abide by Department policy outlined in Section 6422 of the
Department of Family and Protective Services handbook, which requires the
Department to attempt to communicate with the incarcerated parent through
face-to-face visits, telephone calls, or written correspondence.  McFarland claims that this policy was not
followed, thus thwarting his ability to maintain contact with the child.  In conjunction with this point, McFarland
contends that because he was not given a telephone number to call or an address
to write anyone at the Department, he could not maintain contact with the
child. 

            This
contention is factually incorrect, based upon the record before us.  As discussed previously in this opinion,
McFarland’s service plan contained the name, address, and telephone number of
his caseworker.  Moreover, the evidence
before this Court establishes that Nehls developed a service plan for McFarland
and made face-to-face contact with him. 
McFarland was provided with an outline of services that he could use to
learn and demonstrate parenting skills.  Further,
McFarland was present at the adversary hearing where he could have clarified
any questions regarding maintaining contact with the child.  

            Roberson
testified that McFarland did not (1) make an effort to be a part of the child’s
life, (2) check on her, or (3) send her letters, even when he was aware the
child was in the Department’s care.  See In re K.F.K., No. 04-08-00186-CV,
2009 WL 2767043 (Tex. App.––San Antonio, Aug. 31, 2009, pet. denied) (mem.
op.) (incarcerated father’s sporadic letters to children do not constitute
significant contact).  When McFarland was
questioned about what he knew about K.J.T.M., he responded that he knew
nothing.  Considering all the evidence in
a neutral light, we hold that the evidence is such that the court could
reasonably form a “firm belief or conviction” that McFarland failed to
regularly visit or maintain significant contact with K.J.T.M.  See
N.R., 101 S.W.3d at 774.  Thus, the
evidence is factually sufficient on this element, and because the evidence is
factually sufficient, it is necessarily legally sufficient.  See In
re D.S.A., 113 S.W.3d 567, 573 (Tex. App.––Amarillo 2003, no pet.).  The evidence is both legally and factually
sufficient to support the trial court’s findings under Section 161.001(1)(N).[13]


            B.        Section 263.405 of the Texas Family Code
Is Not Unconstitutional as Applied 

            McFarland
claims that Section 263.405(i) of the Texas Family Code is unconstitutional in
its application in that it denies due process of law under the Fourteenth
Amendment to the United States Constitution and due course of law under the
Texas Constitution by restricting what issues can be preserved and raised on
appeal from a judgment of termination of parental rights.  McFarland further claims that this section of
the Code is an unconstitutional violation of the separation of powers doctrine
and that Section 263.405(b) amounts to an unconstitutional delegation of power
to the trial court to determine whether an appeal is frivolous.  See
Tex. Fam. Code Ann. §
263.405.  As attempted to be applied in
the circumstance of this case, the constitutional arguments are “full of sound
and fury, [s]ignifying nothing.”[14]

            The
initial constitutional complaints are directed at the much-maligned “statement
of points” that must be filed no later than fifteen days after the date the
final termination order is signed by the trial court in order to be considered
by an appellate court in reviewing the termination proceeding.[15]
 With the enactment of these time
limitations, the filing of the statement of points was made
jurisdictional.  See In re E.A.R., 201 S.W.3d 813 (Tex. App.––Waco 2006, no
pet.).  McFarland complains that it is difficult,
if not impossible, to frame the precise issues for the statement of points in
the absence of a record of the trial proceedings.  Given the condensed time frame in which the
statement of points must be filed, the statement must necessarily be prepared,
in the vast majority of cases, without the benefit of a record.  This has the effect, contends McFarland, of
creating an inherent roadblock to the ability of an appellant to present a
statement of points with the degree of specificity required under the statute,
and is therefore a violation of his due process rights. 

            McFarland
further claims that Section 263.405 unconstitutionally violates the separation
of powers doctrine in the Texas Constitution because it infringes on the
ability of the appellate court to exercise a “core power” reserved for the
judicial branch by telling those courts what issues may be considered on
appeal.  In re M.C.T., 250 S.W.3d 161, 172–73 (Tex. App.––Fort Worth 2008,
no pet.); In re D.W., 249 S.W.3d 625,
645 (Tex. App.––Fort Worth 2008, pet. denied). 
McFarland claims the requirement of limiting the appellate court’s
consideration only to those points raised in the statement of points is
unconstitutional as applied because he would have framed some of his issues
differently if he had the benefit of the record upon which to base the
appeal.  

            Finally,
McFarland contends that the statute represents an unconstitutional delegation
of power to the trial court to determine whether the appeal is frivolous
because this requirement infringes upon those powers of the courts of appeals
to determine whether or not an appeal is frivolous.  Tex.
Const. art. V, § 6.  To allow the
district court to determine whether an appeal is frivolous effectively makes
the district court the arbiter of whether an issue can be reviewed by a higher
court.

            An
“‘as applied challenge’ only requires the challenger to demonstrate that the
statute operates unconstitutionally when applied to the challenger’s particular
circumstances.”  In re B.S.W., 87 S.W.3d 766, 771 (Tex. App.––Texarkana 2002, pet.
denied), overruled sub silentio on other
grounds by A.V., 113 S.W.3d 355.  In
an “as applied” challenge, the argument is that a statute, even though
generally constitutional, operates unconstitutionally concerning a person
because of that person’s particular circumstances.  Tex.
Workers’ Comp. Comm’n v. Garcia, 893 S.W.2d 504, 518 (Tex. 1995).

            The
State argues that we should reach none of these arguments because McFarland has
been unable to show any issues that would have been raised with effect but for
the unconstitutional restriction.  In
other words, McFarland cannot show any unconstitutional restriction based upon
his particular circumstances.  Here,
McFarland timely filed his statement of points pursuant to Section 263.405 of
the Texas Family Code.  Tex. Fam. Code Ann. § 263.405.  In conjunction with this filing, McFarland
also timely filed his motion for new trial. 
In both his statement of points and motion for new trial, McFarland
asserts each complaint he has raised on appeal. 
Moreover, McFarland timely submitted detailed issues to the trial court,
and has suggested no other issues or arguments that he is prevented from making
because of the application of this statute.

            Further,
while McFarland complains of the unconstitutionality of the trial court’s power
to determine whether an appeal is frivolous, his appeal was found not to be frivolous.  

            As
we discussed in In re S.K.A., 236
S.W.3d 875 (Tex. App.––Texarkana 2007, pet. denied), and more recently in In re J.A.W., No. 06-09-00068-CV, 2010
WL 1236432 (Tex. App.––Texarkana Apr. 1, 2010, no pet.) (mem. op.), the statute
contains the potential to create constitutional violations.  However, the facts in this case do not
implicate any such violations.

            The
Texas Supreme Court has repeatedly stated that we should not delve into
constitutional issues if other grounds dispose of an appeal.  See
VanDevender v. Woods, 222 S.W.3d 430, 432 (Tex. 2007) (noting that courts
should rest decisions on nonconstitutional grounds, if available, and not “wade
into ancillary constitutional questions”); In
re B.L.D., 113 S.W.3d 340, 349 (Tex. 2003) (“As a rule, we only decide
constitutional questions when we cannot resolve issues on nonconstitutional
grounds.”). 

            Applying
that general stricture, several appellate courts have held that due process or
separation of powers issues should not be addressed where there is no showing
that the operation of the challenged statute harmed the appellant.  See,
e.g., Walker v. Tex. Dep’t of Family
& Protective Servs., No. 01-07-00867-CV, 2009 WL 1688469, at *7, 12
(Tex. App.—Houston [1st Dist.] June 18, 2009, pet. denied); M.C. v Tex. Dep’t of Family & Protective
Servs., No. 08-08-00053-CV, 2009 WL 3450987 (Tex. App.—El Paso Oct. 28,
2009, pet. denied); In re M.M.F.,
No. 02-08-00014-CV, 2008 WL 5265033, at *7 (Tex. App.—Fort Worth Dec. 18, 2008,
no pet.) (mem. op.).  Further, the
mootness doctrine prevents courts of this state from rendering advisory
opinions, as such opinions are outside the jurisdiction conferred by Article II,
Section 1 of the Texas Constitution.  See Valley Baptist Med. Ctr. v. Gonzalez,
33 S.W.3d 821, 822 (Tex. 2000). 

            McFarland
does not identify any issues that we have not already addressed which were
preserved in the court below but not raised herein because those issues were
not included in his statement of points. 
He has not shown how the statute operated to deprive him of the ability
to raise certain challenges on appeal. 
Moreover, because McFarland’s appeal was determined by the trial court
not to be frivolous, McFarland has not been harmed by the operation of the
statute as applied to the facts presented here, and this argument is therefore
not properly before this Court for review. 
Thus, we may not address the constitutional issues raised here, and the
contentions of error are overruled.  

            We affirm the judgment of the trial
court.

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          April 26, 2010

Date Decided:             April 27, 2010











[1]Tiffonie
O’Neal, the mother of K.J.T.M., was then sixteen years old and McFarland, the
father of K.J.T.M., was then fifteen years old. 
O’Neal and McFarland had a child together in the year prior to the birth
of K.J.T.M.  Both parents’ rights to that
child were terminated.  

 





[2]McFarland
was incarcerated in September 2008; K.J.T.M. was born in November 2008. 

 





[3]Although
O’Neal’s parental rights were likewise terminated, she has not appealed.





[4]The
trial court also determined that McFarland knowingly placed or knowingly
allowed the child to remain in conditions or surroundings which endanger the
physical or emotional well-being of the child. 
Tex. Fam. Code Ann. §
161.001(1)(D).  McFarland contends the
evidence was legally and factually insufficient to support termination on this
basis as well.  The State appears to
concede this issue, as it did not respond to this issue in its brief.  Because we determine the evidence to be
legally and factually sufficient to support termination in accordance with
Section 161.001(1)(N) of the Texas Family Code, in conjunction with the trial
court’s uncontested finding that termination is in the best interest of the
child, we do not address the sufficiency of the evidence to support termination
pursuant to Section 161.001(1)(D) of the Texas Family Code.  Tex.
Fam. Code Ann. § 161.001(1)(D); see
A.V., 113 S.W.3d at 361 (sufficient proof of one statutory termination ground,
in tandem with finding that termination is in best interest of child, is
sufficient to support termination order).





[5]The
evidence further indicates a visit February 25, 2009, between McFarland and
Lydia Nehls, the conservatorship worker assigned to McFarland’s case.  





[6]McFarland
testified via telephonic communication and was thus unable to personally
examine the document identified as the service plan or to verify his signature
on that document. 

 





[7]The
Family Service Plan for cause number 2008-2581-DR was signed by McFarland and
Nehls.  The service plan identifies Nehls
as the person to contact for information about the plan and lists a telephone
number for her and a mailing address for the Department as “2130 Alpine Road,
Longview, TX 75601.”  The February 25,
2009, signature date on the service plan coincides with the date of a review
hearing in McFarland’s case; McFarland does not recall if he might have signed
the service plan at that time.  The
record reflects McFarland’s presence in the courtroom on February 25,
2009.  McFarland’s attorney stated that
McFarland received the service plan “maybe yesterday or today,” thus
acknowledging on behalf of his client that McFarland did, in fact, receive the
service plan. Nehls also acknowledged having gone over the service plan with
McFarland on the morning of February 25, 2009, prior to the commencement of the
review hearing.  On this date, there was
also an extended discussion on the record regarding the items included in the
service plan and compliance with the plan while McFarland was in juvenile
detention.  

 





[8]McFarland
was also offered services in May 2009 and he participated in life skills and
anger management programs that were available at the juvenile detention
center.  

 





[9]McFarland’s
lack of concern regarding K.J.T.M.’s care is reflected in the following
statement in which he placed the burden of K.J.T.M.’s care on the Department:

 

They
not -- they probably taking care of [K.J.T.M.], but they ain’t doing it for me,
they doing it for -- ‘cause it’s they [sic] job, you know what I’m saying?  It ain’t for me.  If they was [sic] doing it for me, that’s
like my mama or my people taking care of her, then that would be taking care of
her for me.  But that’s they [sic] job,
you know what I’m saying?

 





[10]One
of McFarland’s sisters was involved in a plot to rob an individual named
Montague Stoker, and was present in his home when Stoker was shot and
killed.  

 





[11]The
Department was likewise unable to place the child in the care of O’Neal’s
relatives.

 





[12]The
concept of a “reasonable effort” to return the child is effectively a sliding
scale, depending on the situation.  Here,
there is evidence to support a finding that the State made a reasonable effort
to return the child by attempting services which could have led to a change in
McFarland’s attitude and behavior.  





[13]McFarland
does not contest the first and third elements of constructive abandonment,
i.e., that the Department had temporary managing conservatorship of K.J.T.M.
for at least six months and that he has demonstrated an inability to provide
the child with a safe environment. 

 





[14]William
Shakespeare, Macbeth, Act V, Scene V.

 





[15]An
appellate court reviewing a termination of parental rights on the State’s petition
“may not consider any issue that was not specifically presented to the trial
court in a timely filed statement of the points on which the party intends to
appeal . . . .”  Tex. Fam. Code Ann. § 263.405(i).  To be timely, the statement of points must be
filed within fifteen days of the date of the final order.  Tex.
Fam. Code Ann. § 263.405(b).