

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00104-CV

_____

IN THE INTEREST OF K.J.T.M., A CHILD

On Appeal from the 307th Judicial District Court
Gregg County, Texas
Trial Court No. 2008-2581-DR

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

After the entry of a judgment terminating Kenny McFarland, Jr.'s, parental rights to K.J.T.M., McFarland has filed this appeal. McFarland has made a timely filing of a motion for new trial and a statement of appellate points. *See* TEX. FAM. CODE ANN. § 263.405(b) (Vernon 2008). Although the trial court denied McFarland's motion for new trial, it found his appeal not to be frivolous and continued the appointment of trial counsel for the purpose of appeal. We affirm the judgment of termination of McFarland's parental rights as entered by the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 26, 2008, K.J.T.M., then one week old, was brought into the care of the Texas Department of Family and Protective Services (Department).[1] At the time of his child's birth, McFarland was incarcerated in the juvenile detention center in Longview. Now, McFarland is currently serving a twenty-year sentence for aggravated robbery[2] in the Texas Youth Commission. K.J.T.M. is with her brother in the care of a foster family who hopes to adopt her.

A bench trial was held October 13, 2009, at which time McFarland's parental rights were terminated pursuant to Section 161.001 of the Texas Family Code. TEX. FAM. CODE ANN. §§ 161.001(1)(D), (N), 161.001(2) (Vernon Supp. 2009). McFarland appeals from the order of

---

[1]Tiffonie O'Neal, the mother of K.J.T.M., was then sixteen years old and McFarland, the father of K.J.T.M., was then fifteen years old. O'Neal and McFarland had a child together in the year prior to the birth of K.J.T.M. Both parents' rights to that child were terminated.

[2]McFarland was incarcerated in September 2008; K.J.T.M. was born in November 2008.

termination,[3] claiming (1) the evidence is legally and factually insufficient to support termination under Section 161.001(1)(D) and (N) of the Texas Family Code, (2) Section 263.405(i) of the Texas Family Code is unconstitutional in its application because it denies McFarland due process of law, (3) Section 263.405(i) of the Texas Family Code is unconstitutional in principle and in application because it violates the separation of powers doctrine of the Texas Constitution, and (4) Section 263.405(b) of the Texas Family Code is unconstitutional because it delegates to the trial court the power to determine whether the appeal is frivolous. TEX. FAM. CODE ANN. § 161.001(D), (N), § 263.405 (Vernon 2008).

## II.     STANDARD OF REVIEW

### A.     Termination of Parental Rights

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (Vernon 2008); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This intermediate standard falls between the "preponderance of the evidence" standard of ordinary civil proceedings and the "beyond a reasonable doubt" standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re K.W.*, 138 S.W.3d 420, 425 (Tex. App.—Fort Worth 2004, pet. denied). Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re A.W.*,

---

[3]Although O'Neal's parental rights were likewise terminated, she has not appealed.

No. 06-07-00118-CV, 2008 WL 360825, at *1 (Tex. App.—Texarkana Feb. 12, 2008, no pet.) (mem. op.).

### B. Standard in Conducting Legal and Factual Sufficiency Review

In reviewing the legal sufficiency of the evidence, we view all the evidence in a light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. TEX. FAM. CODE ANN. § 101.007 (Vernon 2008); *J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 25. Looking at the evidence in the light most favorable to the judgment means that we must assume that the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible. *J.F.C.*, 96 S.W.3d at 266. If we determine that no reasonable fact-finder could form a firm belief or conviction that the grounds for termination were proven, then the evidence is legally insufficient, and we must generally render judgment for the parent. *See id.*; *see also* TEX. R. APP. P. 43.3.

When reviewing a factual sufficiency challenge to a parental rights termination, we consider the evidence the fact-finder could reasonably have found to be clear and convincing. *C.H.*, 89 S.W.3d at 25–26. In applying this standard to a trial court's findings, we ask whether there was sufficient evidence presented to produce in the mind of a rational fact-finder a firm belief or conviction as to the truth of the allegations sought to be established. *In re N.R.*, 101 S.W.3d

4

771, 774 (Tex. App.—Texarkana 2003, no pet.).  In making this analysis, we give due deference to the fact-finder's findings and do not supplant those findings with our own.  *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

We also acknowledge that sufficient proof of one statutory termination ground, in tandem with the finding that termination is in the best interest of the child, is sufficient to support a termination order.  *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003).

## III.    ANALYSIS OF POINTS OF ERROR

### A.    Constructive Abandonment

In its order of termination, the court found by clear and convincing evidence that McFarland has:

> 7.2.2    constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the child to the father; (2) the father has not regularly visited or maintained significant contact with the child; and (3) the father has demonstrated an inability to provide the child with a safe environment.[4]

---

[4]The trial court also determined that McFarland knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child.  TEX. FAM. CODE ANN. § 161.001(1)(D).  McFarland contends the evidence was legally and factually insufficient to support termination on this basis as well.  The State appears to concede this issue, as it did not respond to this issue in its brief.  Because we determine the evidence to be legally and factually sufficient to support termination in accordance with Section 161.001(1)(N) of the Texas Family Code, in conjunction with the trial court's uncontested finding that termination is in the best interest of the child, we do not address the sufficiency of the evidence to support termination pursuant to Section 161.001(1)(D) of the Texas Family Code.  TEX. FAM. CODE ANN. § 161.001(1)(D); *see A.V.*, 113 S.W.3d at 361 (sufficient proof of one statutory termination ground, in tandem with finding that termination is in best interest of child, is sufficient to support termination order).

This finding mirrors the language set forth in Section 161.001(1)(N) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(1)(N). McFarland contests the legal and factual sufficiency of the evidence to support the first and second elements of the constructive abandonment ground, claiming that the record is devoid of evidence that the State made reasonable efforts to return the child to him and offered no information to allow contact with the child.

### (1) Reasonable efforts to return the child

McFarland initially contends that the State failed to prove, by clear and convincing evidence, that it made reasonable efforts to return K.J.T.M. to him. We note that there is some authority to suggest that the element concerning reasonable efforts to return the child is inapplicable when the parent is incarcerated. *See In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied) (second element not applicable because appellant was incarcerated). Regardless, implementation of a family service plan by the Department is generally considered a reasonable effort to return a child to the parent. *In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.); *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.). Here, McFarland claims there was no service plan.

McFarland maintained that during his thirteen-month period of incarceration which coincided with termination proceedings, a Department employee visited him only on two occasions. The first visit took place to inform McFarland that K.J.T.M. was being taken into the

6

custody of the State, and the second took place August 17, 2009.[5] McFarland complains that he was neither provided with a service plan to review or to sign, nor was he provided with contact information for the Department. Based upon this history, McFarland contends that the record is devoid of evidence that the Department made reasonable efforts to return K.J.T.M. to him.

The record indicates that McFarland did, in fact, receive a service plan. McFarland recalls a visit from the Department employee by the name of "Lydia" (identified by other evidence as being Lydia Nehls) while he was in the juvenile detention center. Although McFarland testified that Nehls provided him with neither a service plan nor with contact information, a copy of a service plan dated February 25, 2009, was admitted into evidence without objection.[6] Further, Mona Nolen, the Department investigator in charge of this case, testified that it would have been Nehls' responsibility to develop a service plan for McFarland.[7] Karen Roberson, a Department conservatorship worker, testified that Nehls developed a service plan for McFarland and made

[5]The evidence further indicates a visit February 25, 2009, between McFarland and Lydia Nehls, the conservatorship worker assigned to McFarland's case.

[6]McFarland testified via telephonic communication and was thus unable to personally examine the document identified as the service plan or to verify his signature on that document.

[7]The Family Service Plan for cause number 2008-2581-DR was signed by McFarland and Nehls. The service plan identifies Nehls as the person to contact for information about the plan and lists a telephone number for her and a mailing address for the Department as "2130 Alpine Road, Longview, TX 75601." The February 25, 2009, signature date on the service plan coincides with the date of a review hearing in McFarland's case; McFarland does not recall if he might have signed the service plan at that time. The record reflects McFarland's presence in the courtroom on February 25, 2009. McFarland's attorney stated that McFarland received the service plan "maybe yesterday or today," thus acknowledging on behalf of his client that McFarland did, in fact, receive the service plan. Nehls also acknowledged having gone over the service plan with McFarland on the morning of February 25, 2009, prior to the commencement of the review hearing. On this date, there was also an extended discussion on the record regarding the items included in the service plan and compliance with the plan while McFarland was in juvenile detention.

face-to-face contact with him. McFarland was provided an outline of services that he could use to develop parenting skills.

The evidence clearly establishes that the Department did implement a family service plan with respect to McFarland.[8] However, because McFarland failed to demonstrate the ability to parent and protect the child and to demonstrate an acceptance of the responsibility of being a parent, he failed to comply with the service plan.[9] So, whether or not the Department was required, under these circumstances, to present evidence that it made reasonable efforts to return K.J.T.M. to McFarland, it did so by establishing that it implemented a family service plan for McFarland.

Moreover, the Department made efforts, although futile, to place K.J.T.M. with relatives. When Nolen visited McFarland in the juvenile detention center, she inquired about relatives who could care for the child. There were no suitable suggestions made. McFarland provided Nolen with the name of his mother, Janice Davis. Because Davis had a lengthy history with the Department regarding other children, she was determined not to be an appropriate placement.

---

[8]McFarland was also offered services in May 2009 and he participated in life skills and anger management programs that were available at the juvenile detention center.

[9]McFarland's lack of concern regarding K.J.T.M.'s care is reflected in the following statement in which he placed the burden of K.J.T.M.'s care on the Department:

> They not -- they probably taking care of [K.J.T.M.], but they ain't doing it for me, they doing it for -- 'cause it's they [sic] job, you know what I'm saying? It ain't for me. If they was [sic] doing it for me, that's like my mama or my people taking care of her, then that would be taking care of her for me. But that's they [sic] job, you know what I'm saying?

McFarland also provided the names of his two sisters as possible placements. However, one sister had children who were being raised by Davis, and the other sister was in high school.[10] Finally, the Department contacted McFarland's grandmother, Naya McFarland, regarding placement in her home; Naya advised that she was neither physically nor financially able to care for the child. Having determined that McFarland had no relatives who were equipped to care for the child, the Department was unable to place K.J.T.M. in the care of a relative.[11]

The Department's preparation and administration of a service plan, in conjunction with its consideration of all relative placements, demonstrate that the trial court did not err in finding that the Department made reasonable efforts to return the child to McFarland.[12]

### (2) The failure to regularly visit or maintain significant contact with the child

McFarland contends that he was continually confined since September 1, 2008, and the State did not allege incarceration as a ground for termination. Consequently, McFarland contends that the State was obliged to abide by Department policy outlined in Section 6422 of the Department of Family and Protective Services handbook, which requires the Department to attempt to communicate with the incarcerated parent through face-to-face visits, telephone calls, or

---

[10]One of McFarland's sisters was involved in a plot to rob an individual named Montague Stoker, and was present in his home when Stoker was shot and killed.

[11]The Department was likewise unable to place the child in the care of O'Neal's relatives.

[12]The concept of a "reasonable effort" to return the child is effectively a sliding scale, depending on the situation. Here, there is evidence to support a finding that the State made a reasonable effort to return the child by attempting services which could have led to a change in McFarland's attitude and behavior.

9

written correspondence.   McFarland claims that this policy was not followed, thus thwarting his ability to maintain contact with the child.   In conjunction with this point, McFarland contends that because he was not given a telephone number to call or an address to write anyone at the Department, he could not maintain contact with the child.

This contention is factually incorrect, based upon the record before us.   As discussed previously in this opinion, McFarland's service plan contained the name, address, and telephone number of his caseworker.   Moreover, the evidence before this Court establishes that Nehls developed a service plan for McFarland and made face-to-face contact with him.   McFarland was provided with an outline of services that he could use to learn and demonstrate parenting skills. Further, McFarland was present at the adversary hearing where he could have clarified any questions regarding maintaining contact with the child.

Roberson testified that McFarland did not (1) make an effort to be a part of the child's life, (2) check on her, or (3) send her letters, even when he was aware the child was in the Department's care.   *See In re K.F.K.*, No. 04-08-00186-CV, 2009 WL 2767043 (Tex. App.—San Antonio, Aug. 31, 2009, pet. denied) (mem. op.) (incarcerated father's sporadic letters to children do not constitute significant contact).   When McFarland was questioned about what he knew about K.J.T.M., he responded that he knew nothing.   Considering all the evidence in a neutral light, we hold that the evidence is such that the court could reasonably form a "firm belief or conviction" that McFarland failed to regularly visit or maintain significant contact with K.J.T.M.   *See N.R.*,

101 S.W.3d at 774. Thus, the evidence is factually sufficient on this element, and because the evidence is factually sufficient, it is necessarily legally sufficient. *See In re D.S.A.*, 113 S.W.3d 567, 573 (Tex. App.—Amarillo 2003, no pet.). The evidence is both legally and factually sufficient to support the trial court's findings under Section 161.001(1)(N).[13]

**B.      Section 263.405 of the Texas Family Code Is Not Unconstitutional as Applied**

McFarland claims that Section 263.405(i) of the Texas Family Code is unconstitutional in its application in that it denies due process of law under the Fourteenth Amendment to the United States Constitution and due course of law under the Texas Constitution by restricting what issues can be preserved and raised on appeal from a judgment of termination of parental rights. McFarland further claims that this section of the Code is an unconstitutional violation of the separation of powers doctrine and that Section 263.405(b) amounts to an unconstitutional delegation of power to the trial court to determine whether an appeal is frivolous. *See* TEX. FAM. CODE ANN. § 263.405. As attempted to be applied in the circumstance of this case, the constitutional arguments are "full of sound and fury, [s]ignifying nothing."[14]

The initial constitutional complaints are directed at the much-maligned "statement of points" that must be filed no later than fifteen days after the date the final termination order is

---

[13]McFarland does not contest the first and third elements of constructive abandonment, i.e., that the Department had temporary managing conservatorship of K.J.T.M. for at least six months and that he has demonstrated an inability to provide the child with a safe environment.

[14]William Shakespeare, *Macbeth*, Act V, Scene V.

signed by the trial court in order to be considered by an appellate court in reviewing the termination proceeding.[15] With the enactment of these time limitations, the filing of the statement of points was made jurisdictional. *See In re E.A.R.*, 201 S.W.3d 813 (Tex. App.—Waco 2006, no pet.). McFarland complains that it is difficult, if not impossible, to frame the precise issues for the statement of points in the absence of a record of the trial proceedings. Given the condensed time frame in which the statement of points must be filed, the statement must necessarily be prepared, in the vast majority of cases, without the benefit of a record. This has the effect, contends McFarland, of creating an inherent roadblock to the ability of an appellant to present a statement of points with the degree of specificity required under the statute, and is therefore a violation of his due process rights.

McFarland further claims that Section 263.405 unconstitutionally violates the separation of powers doctrine in the Texas Constitution because it infringes on the ability of the appellate court to exercise a "core power" reserved for the judicial branch by telling those courts what issues may be considered on appeal. *In re M.C.T.*, 250 S.W.3d 161, 172–73 (Tex. App.—Fort Worth 2008, no pet.); *In re D.W.*, 249 S.W.3d 625, 645 (Tex. App.—Fort Worth 2008, pet. denied). McFarland claims the requirement of limiting the appellate court's consideration only to those points raised in the statement of points is unconstitutional as applied because he would have

---

[15]An appellate court reviewing a termination of parental rights on the State's petition "may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal . . . ." TEX. FAM. CODE ANN. § 263.405(i). To be timely, the statement of points must be filed within fifteen days of the date of the final order. TEX. FAM. CODE ANN. § 263.405(b).

12

framed some of his issues differently if he had the benefit of the record upon which to base the appeal.

Finally, McFarland contends that the statute represents an unconstitutional delegation of power to the trial court to determine whether the appeal is frivolous because this requirement infringes upon those powers of the courts of appeals to determine whether or not an appeal is frivolous. TEX. CONST. art. V, § 6. To allow the district court to determine whether an appeal is frivolous effectively makes the district court the arbiter of whether an issue can be reviewed by a higher court.

An "'as applied challenge' only requires the challenger to demonstrate that the statute operates unconstitutionally when applied to the challenger's particular circumstances." *In re B.S.W.*, 87 S.W.3d 766, 771 (Tex. App.—Texarkana 2002, pet. denied), *overruled sub silentio on other grounds by A.V.*, 113 S.W.3d 355. In an "as applied" challenge, the argument is that a statute, even though generally constitutional, operates unconstitutionally concerning a person because of that person's particular circumstances. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995).

The State argues that we should reach none of these arguments because McFarland has been unable to show any issues that would have been raised with effect but for the unconstitutional restriction. In other words, McFarland cannot show any unconstitutional restriction based upon his particular circumstances. Here, McFarland timely filed his statement of points pursuant to

Section 263.405 of the Texas Family Code. TEX. FAM. CODE ANN. § 263.405. In conjunction with this filing, McFarland also timely filed his motion for new trial. In both his statement of points and motion for new trial, McFarland asserts each complaint he has raised on appeal. Moreover, McFarland timely submitted detailed issues to the trial court, and has suggested no other issues or arguments that he is prevented from making because of the application of this statute.

Further, while McFarland complains of the unconstitutionality of the trial court's power to determine whether an appeal is frivolous, his appeal was found *not* to be frivolous.

As we discussed in *In re S.K.A.*, 236 S.W.3d 875 (Tex. App.—Texarkana 2007, pet. denied), and more recently in *In re J.A.W.*, No. 06-09-00068-CV, 2010 WL 1236432 (Tex. App.—Texarkana Apr. 1, 2010, no pet.) (mem. op.), the statute contains the potential to create constitutional violations. However, the facts in this case do not implicate any such violations.

The Texas Supreme Court has repeatedly stated that we should not delve into constitutional issues if other grounds dispose of an appeal. *See VanDevender v. Woods*, 222 S.W.3d 430, 432 (Tex. 2007) (noting that courts should rest decisions on nonconstitutional grounds, if available, and not "wade into ancillary constitutional questions"); *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) ("As a rule, we only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds.").

14

Applying that general stricture, several appellate courts have held that due process or separation of powers issues should not be addressed where there is no showing that the operation of the challenged statute harmed the appellant. *See, e.g.*, *Walker v. Tex. Dep't of Family & Protective Servs.*, No. 01-07-00867-CV, 2009 WL 1688469, at *7, 12 (Tex. App.—Houston [1st Dist.] June 18, 2009, pet. denied); *M.C. v Tex. Dep't of Family & Protective Servs.*, No. 08-08-00053-CV, 2009 WL 3450987 (Tex. App.—El Paso Oct. 28, 2009, pet. denied); *In re M.M.F.*, No. 02-08-00014-CV, 2008 WL 5265033, at *7 (Tex. App.—Fort Worth Dec. 18, 2008, no pet.) (mem. op.). Further, the mootness doctrine prevents courts of this state from rendering advisory opinions, as such opinions are outside the jurisdiction conferred by Article II, Section 1 of the Texas Constitution. *See Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000).

McFarland does not identify any issues that we have not already addressed which were preserved in the court below but not raised herein because those issues were not included in his statement of points. He has not shown how the statute operated to deprive him of the ability to raise certain challenges on appeal. Moreover, because McFarland's appeal was determined by the trial court not to be frivolous, McFarland has not been harmed by the operation of the statute as applied to the facts presented here, and this argument is therefore not properly before this Court for review. Thus, we may not address the constitutional issues raised here, and the contentions of error are overruled.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:      April 26, 2010
Date Decided:        April 27, 2010